# THE FREDERICK COUNTY NAT. BANK *vs.* WILLIAM E. SHAFER AND DAISY E. SHAFER.

### *Injunctions—Enforcing Payment of a Debt.*

A general creditor is not entitled to an injunction restraining the payment of money due to his debtor by a third party and enjoining the debtor from assigning his claim to the money until such creditor shall have obtained judgment in a pending action at law, although the debtor is insolvent and the creditor without other remedy.

Code, Art. 16, sec. 69, providing that a *mandamus* or injunction shall not be refused merely because the party asking for it has an adequate remedy in damages, does not authorize the issue of a *mandamus* or injunction to enforce payment of a debt.

Appeal from an order of the Circuit Court for Frederick County (McSHERRY, C. J.), dissolving an injunction and dismissing the bill of complaint.

The cause was argued before BRYAN, FOWLER, BRISCOE PAGE, ROBERTS and BOYD, JJ. (Dec. 1, 1897).

*John S. Newman* (with whom were *Wm. P. Maulsby* and *Benj. F. Reich* on the brief), for the appellant.

The Court declined to hear *Milton G. Urner* (with whom was *P. Frank Pampel* on the brief), for the appellees.

BOYD, J., delivered the opinion of the Court.

This case was virtually disposed of at the hearing, as it was announced then that we were of opinion a Court of Equity could not interfere on the facts set out in the bill. Further reflection and examination of the authorities have not in any wise changed our views, but have only strengthened the opinion we then had. The bill was filed in the Circuit Court for Frederick County, and alleges that the plaintiff is the holder of four promissory notes, subject to certain credits, signed by William E. Shafer, Daisy E. Shafer and Margaret Shafer, each being payable six months

after date and all being due six months or more before the
bill was filed.   It is alleged that there has been audited in
No. 4785 Insolvencies, in the Circuit Court for Frederick
County, to Daisy E. Shafer as a creditor of William, the
sum of $439.53; that she is utterly insolvent, and has no
property out of which plaintiff can make its claim; that the
audit is about ready for ratification, and if the money is paid
over to her, the plaintiff will be entirely without means of
enforcing payment of its debts.   The bill then prays for a
decree directing the trustees in insolvency to pay to the
plaintiff the money audited to her, and that she may be en-
joined from assigning, transferring or disposing of said sum
of money and the claim upon which the allowance is made.
A preliminary injunction was granted, and a demurrer inter-
posed by Mrs. Shafer and her husband.   Upon petition,
leave was granted to amend the bill, which was done by
alleging that since the injunction was issued, the audit had
been ratified; that the plaintiff had on the 9th day of August,
1897, brought suit on the law side of the Court on the cause
of action mentioned in the bill, and that the plaintiff is
advised that even if not entitled to have the money paid over
it, it is entitled to have the trustees in insolvency restrained
from paying it over to Mrs. Shafer, and to have her enjoined
from assigning, etc., the claim until the plaintiff's right in
the suit at law can be disposed of, as otherwise it will be
remediless by reason of her insolvency.   The prayer for
relief was amended so as to have the injunction in force,
pending the determination of the law case as well as this
case.   After the amendment the demurrer was refiled, and
having been sustained, the injunction was dissolved, and the
bill dismissed.

The claim of the plaintiff is purely a legal one, and it
is simply a general creditor without a judgment to establish
the indebtedness of the defendant or the amount due.
There is no suggestion of fraud on the part of the defend-
ants, or any of them.   That the plaintiff has no special
right to this fund must be conceded, and it certainly is no

more entitled to it than any other general creditor. It is possible that Mrs. Shafer intends to apply it, when she gets it, to the payment of some other debt, just as meritorious and binding on her as the notes of the plaintiff. Upon what principle could a Court of Equity prevent her from doing so, if she saw proper to so use the money? The mere suggestion of such a result would seem to be enough to show that a Court of Equity neither has, nor ought to have any such powers. If they could be exercised with reference to choses in action, why not prohibit the unfortunate debtor, who has no property but the house he lives in, or his household furniture, from transferring it until his creditors can obtain judgment at law against him. The owner is entitled to his property, and to the use of it, whether it be real estate, chattels, choses in action or money, and no Court has the right to lay hold of it, or interfere with his lawful use of it, simply to await the result of a suit at law.

If it is an open question elsewhere, a reference to some of the decisions of this Court will show that it is not so in this State. In *Uhl* v. *Dillon*, 10 Md. 500, the bill alleged that the defendant was indebted to the complainant in a specified sum; that he was disposing of his property and collecting the debts due him, and secreting the same with intent to defraud his creditors, and that he intended as soon as he completed such sales and collections, to abscond, for the purpose of hindering, delaying and defrauding his creditors, but an injunction was refused. The Court, through BARTOL, J., said: "No authority has been shown to this Court, nor can any be produced, entitled to consideration, which sanctions the exercise of the high and extraordinary power of a Court of Chancery to interpose by writ of injunction, in a case like the one before us, restraining a debtor in the enjoyment and power of disposition of its property. The appellees (the complainants below) are merely general creditors of the appellant, who have not prosecuted their claim to judgment and execution, nor in

any other manner acquired a lien upon the debtor's prop-
erty, and were not entitled to the writ of injunction, nor to
the appointment of a receiver." In *Rich* v. *Levy*, 16 Md.
74, the bill alleged that the debtor was selling his goods
and applying the proceeds to his own use, was utterly in-
solvent, etc., but the Court refused to restrain him at the
instance of a creditor who had not reduced his claim to
judgment and execution, nor in any other manner acquired
a lien upon his debtor's property. In *Balls* v. *Balls*, 69
Md. 388, it was held that a Court of Equity would not, at
the instance of a holder of a promissory note upon which
he had not obtained judgment, enjoin the maker from con-
veying his property on the ground that the object of such
conveyance was to delay and hinder the creditor in the col-
lection of his debt. It was determined that the Act of
1835, ch. 380 (sec. 46 of Art. 16 of the Code), dispensing
with the necessity of a judgment "to vacate any convey-
ance or contract, or other act as fraudulent against credit-
ors," did not apply when the thing complained of has not
been executed, but rests merely in contemplation or inten-
tion. See also *Morton* v. *Grafflin*, 68 Md. 545, where a
Court of Equity refused to aid a creditor in enforcing the
inchoate lien which he may have acquired by an attachment
without condemnation. He must perfect his lien at law
before a resort can be had to equity. In *Harper* v. *Clayton*,
84 Md. 346, there is a very full and able review of the
cases in England and in this country as to the powers of
Courts of Equity over the choses in action of debtors in
the absence of statutory authority, fraud, or some other
ground of equity jurisdiction. The reasoning of that case
is very applicable to this. As was well said there "a Court
of Equity, however broad and far-reaching its powers are,
cannot create new rights, not before existing at law, and
then take jurisdiction to pass upon and enforce them be-
cause the law affords no remedy."

The case of *Keerl* v. *Keerl, Trustee*, 28 Md. 157, was re-
lied on by the appellant, but the bill in that case was filed

by a wife to recover alimony from her husband, and to re-
strain a trustee in the Superior Court from paying over
money to him.    The question passed upon was as to the
right of the Circuit Court to restrain a trustee appointed by
the Superior Court from paying the money.    But it was a
wholly different case from this, as it was a claim for alimony,
and, therefore, one to be enforced in a Court of Equity.
That Court has the power, and it is one of the usual ways
of securing the wife's claim for alimony, to enjoin the hus-
band from disposing of his property if the necessary alle-
gations are made.    The case, therefore, has no application
to the one before us.

Nor does the Act of 1888, ch. 260 (sec. 69 of Art. 16
of the Code) aid the appellant's contention.    It never was
intended to apply to cases of this character.    It says that
" No Court shall refuse to issue a *mandamus* or an injunc-
tion on the mere ground that the party asking for the same
has an adequate remedy in damages," etc.    The Legisla-
ture did not intend to authorize a *mandamus* or mandatory
injunction to be issued to require the payment of a debt,
but it only meant that a *mandamus* or injunction should
not be refused merely because the complainant could sue
and recover adequate damages for the act sought to be re-
strained or enforced.    The statute was intended to reach
the class of cases in which injunction or *mandamus* had
been refused because the plaintiff could be compensated in
damages in suits at law.    The learned Judge below was
right in holding that the " statute has relation to cases
where *damages*, as contradistinguished from a *debt* are in-
volved."    But the refusal to grant the injunction need not
be on the mere ground that the appellant had an adequate
remedy at law, but on the broader ground that it was not
in a position to ask the Court to lay hold of the fund, as it
had not shown itself in any manner entitled to it.    Just as
prior to the Act of 1835 Courts of Equity would not in-
terfere, even against fraudulent conveyances, until judgment
had been obtained, because the creditor was not in a posi-

tion to assert a claim against the property, so in this case, the Court could well base its refusal on that ground, or it might go further and refuse to exercise a power fraught with such danger as to thus lay hold of, or impound the money or property of a party merely because it is all he has, and he is alleged to owe the plaintiff. It would be practically equivalent to an attachment in equity, which is purely a creation of statute, and does not exist in this State. The decree must be affirmed.

　　　　　　　*Decree affirmed, costs to be paid by appellant.*

(Decided Jannary 5th, 1898).