WARREN A. BLAKE ET AL. *v.* MARY A. GORSUCH ET AL.

[No. 51, January Term, 1934.]

*Decided April 12th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William Lentz* and *Kenneth C. Proctor,* with whom were *Stephen W. Leitch* and *France, McLanahan & Rouzer* on the brief, for the appellants.

*Harry E. Karr* and *Edward L. Ward,* with whom was *Morton H. Rosen* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

The question upon which the decision of the case depends is: Can creditors, who, although notified of the appointment of receivers, failed to object for seventeen months thereafter, during which time property of an insolvent debtor has been

transferred, and obligations have been incurred, by the receivers, and other creditors have filed their claims in the receivership proceedings, and the objecting creditors have obtained judgments on their claim, and thus attempted to secure preferences, have the proceedings vacated on the ground that the court erred in appointing receivers at the instance of a simple contract creditor who had not obtained a judgment on her claim?

The proceeding sought to be vacated was begun by a bill filed on July 25th, 1932, by Mary A. Gorsuch against her husband, Frank M. Gorsuch. The bill alleged that the defendant was indebted to the plaintiff in the sum of $12,000, with interest, on an unpaid demand note, and is also indebted to other persons and corporations in large sums of money, most of which indebtedness is long overdue; that the bill is filed on behalf of plaintiff and other creditors who may desire to intervene; that the assets of the defendant consist of real estate in Baltimore City and elsewhere, which real estate is valuable, but at the present time unproductive and with no ready market for the sale thereof; that while the aggregate assets of the defendant greatly exceed the aggregate of his liabilities, nevertheless, because of the nature of his assets and the large amount of his indebtedness, he is unable to meet the claims of his creditors in the due and ordinary course of business as they become due; that plaintiff recently demanded payment of her overdue note and was informed by defendant that he was unable to pay same, and plaintiff therefore charges that defendant is unable to meet his obligations in the due and ordinary course of business; that if the defendant is permitted to go on in his present condition, it will subject his assets to the liabilities of separate suits and will therefore subject said assets to the payment of certain claims in prejudice of the claims of all his creditors.

The prayer of the bill is: (1) For the appointment of receivers "to take charge of the assets of every kind and description, properties, books, papers of accounts, goods and effects

of and belonging to said defendant and to collect, the debts due to said defendant and to receive and dispose of the same under the direction of this Honorable Court"; (2) to apply the same to the payment of debts; (3) for general relief.

On the same day the defendant answered admitting all the allegations of the bill, and a receiver was appointed. On September 9th, 1932, the receiver was authorized to have the real estate in Maryland appraised, and to borrow $1,000 to pay interest on mortgages. The appraisement showed a total value of approximately $59,800, against which there are mortgages of $20,500. Subsequently, on petition of two other creditors in the amount of $43,900, an additional receiver was appointed.

Notice to creditors was duly published.

One improved lot appraised at $4,000 was transferred to the holder of a mortgage thereon for the amount of the mortgage, $5,000, and a right of way through a 118-acre farm was conveyed to the State's Roads Commission in connection with the improvement of the Bel Air Road. On August 30th, 1933, an order was passed authorizing and directing the receivers "to sell at public auction such portion or all of the real estate located in Baltimore City and Baltimore County, Maryland, constituting a part of the assets of this estate, as in their opinion may be necessary and proper," after advertisement in a daily newspaper published in Baltimore City and a weekly newspaper published in Baltimore County, and to bring into court "all moneys arising therefrom in order to pay the necessary liens and fixed charges thereon and distribute the balance to the creditors."

The receivers reported on November 9th, 1933, that they had offered at public sale a valuable farm in Baltimore County and at the same time offered the chattels, live stock, and personal property located thereon; that they were unable to obtain a satisfactory price for the farm and were compelled to withdraw the same, but sold the personal property for $554.05. The sale of the personal property was duly ratified. On November 21st, 1933, they asked for authority to sell at private sale a lot with a one-story brick building and a cor-

rugated metal building, both in a dilapidated condition and unoccupied since the appointment of the receivers, situated on the north side of East Baltimore Street in the 4000 block, for $7,500, less commission to broker. The property is assessed at $13,750, and its present value appraised at $8,000. In their petition the receivers state that taxes for 1932 and 1933 on all the property in the receivership are unpaid and none of it is bringing in an income; that the debts are in excess of the present value of the property; that in the opinion of the receivers the offer of $7,500 is more than the said lot and improvements would produce at public sale after deducting expenses. The court authorized a report of said sale, which was filed on the same day.

On December 9th, 1933, two creditors, Warren A. Blake and the Equitable Trust Company, "appearing specially and solely for the purpose of contesting the validity of these proceedings and the appointment of receivers in this cause," filed a petition in which they recite the filing of the bill and answer and the appointment of the receivers, and allege that the said trust company on August 21st, 1932, brought suit against Gorsuch and his wife and on January 26th, 1933, obtained a judgment by default for $10,886.54, and that on October 22nd, 1932, the said Blake had entered a judgment on a judgment note against said Gorsuch for $5,093.33; that said judgments are liens on all the property owned by said Gorsuch in Baltimore County and in Baltimore City referred to in these proceedings; that the said Mary A. Gorsuch is an unsecured creditor of said defendant, as alleged in said bill of complaint; that she had not before, and has not since, the filing of said bill procured judgment on her said claim, and did not allege in her bill of complaint that she had pursued any of the usual remedies at law available to her for the collection of her alleged claim, and that there is no evidence that she has ever done so; that the purpose of filing said bill of complaint and invoking the jurisdiction of a court of equity for the appointment of a receiver by consent was to enable the said Frank M. Gorsuch to remain in possession and control of his properties and to prevent petitioners from en-

forcing judgments on their claims against the properties; that the said Frank M. Gorsuch has remained in control of all of said properties except the property in Baltimore County, which he vacated in October, 1933, and has been collecting the rents and income from said properties; that the appointment of receivers and the assumption by the court of jurisdiction over said property has prevented petitioners from proceeding by way of execution against said property, and that the filing of these proceedings and the appointment of receivers has had the effect of hindering, delaying, and otherwise prejudicing petitioners in the lawful enforcement of their judgments; that the court was without authority to assume jurisdiction over the assets of the defendant and to appoint a receiver under the allegations of the bill of complaint and the consent of the defendant; that the receivers on November 21st, 1933, reported a sale of the fee simple property of the defendant on the north side of East Baltimore Street, known as 4000 East Baltimore Street, for $7,500, which sale is subject to the usual order of ratification; that the court is without power and authority in these proceedings to authorize the sale of any property of the defendant and the reported sale is invalid, and any and all other acts attempted to be performed by the receivers in these proceedings are invalid, and that petitioners are about to file exceptions to the ratification of said sale. The prayer of the petition is that the proceedings be dismissed and that the order appointing the receivers be vacated and the receivers discharged. On the same day exceptions were filed to said sale and the court passed a show cause order on the petition.

On December 26th, 1933, Mary A. Gorsuch and Frank M. Gorsuch and the receivers answered, and in their answer deny that these proceedings were instituted so that the defendant might remain in possession and control of the property, and that he has been in control of any of the assets. They aver that he was allowed to take care of the farm in Baltimore County and to preserve the dwelling house and other buildings from depredation and vandalism by living in

the dwelling house; that he has had nothing whatever to do with any of the other property, except that he has been employed by the Equitable Trust Company in liquidating the assets of the Mallory Machinery Company held by said trust company as collateral upon his indebtedness to it, for which its judgment was obtained; that most of the properties have been vacant for a long time, and that any and all rents collected belong to the estate and will be accounted for by the receivers; that this is entirely and solely a creditor's proceeding and that other creditors have intervened and filed their claims; that it would be inequitable and unjust to allow the petitioning creditors, who stood by and had full knowledge of the administering of the estate by the court for a period of seventeen months, to procure preferences against the rights of other creditors hereto, and to attack the validity of these proceedings; that the attack upon the proceedings is solely for the purpose of procuring preferences for their judgments over other creditors; that this proceeding was instituted for the purpose of procuring an equitable distribution of the assets of the defendant amongst the creditors without preference or priority; that the proceedings are legal and valid; that the properties of the estate are not subject to liens of the judgments of the petitioning creditors, and that these proceedings have not had the effect of hindering, delaying, and prejudicing them in the collection of their just claims; that the court had full authority, in the exercise of its inherent power as a court of equity, to assume jurisdiction and to appoint receivers so that the assets could be equally and equitably distributed among the creditors; and that the petitioning creditors have acquiesced therein and waived any rights that they might have had to question said proceedings. Finally, they demur to the petition and each and every paragraph thereof, as though said demurrer were formally filed herein. The petition and answer were both sworn to, and were heard without testimony, and the petition dismissed. This appeal is from said decree.

The case having been heard on petition and answer, the

truth of all matters stated in the answer which are susceptible of proof by legitimate evidence is admitted. *Miller's Equity Proc.*, sec. 255; *Eversole v. Maull,* 50 Md. 95. This disposes of the allegations in the petition that the purpose of invoking the jurisdiction of a court of equity for the appointment of a receiver was to enable the defendant to remain in possession and control of his properties, and that he has remained in possession and control thereof, and collected and received the rents and income therefrom, which charges are specifically denied in the answer. The fact alleged in the answer that the petitioners knew of these proceedings for seventeen months before objecting thereto is also thus admitted, and the further allegation in the answer that the purpose of the attack is to enable the petitioners to obtain preferences over other creditors. The petitioners rest their case entirely on their charge that the court was without jurisdiction, and that the orders appointing receivers and the entire proceedings are null and void.

It is said in *High on Receivers* (4th Ed.), sec. 406: "Having already shown that the aid of a receiver is extended only in behalf of creditors who have fully exhausted their remedy at law, it follows necessarily that the jurisdiction will not be exercised in favor of mere general creditors whose rights rest only on contract and are not yet reduced to judgment, and who have acquired no lien upon the property of their debtor. Courts of equity will not permit any interference with the right of a debtor to control his own property at the suit of creditors who have acquired no lien thereon. And while there are a few instances where the courts have maintained a contrary doctrine, the greater weight of authority supports the rule that in the absence of statutory provisions to the contrary, a general contract creditor before judgment is not entitled either to an injunction or a receiver against the debtor, upon whose property he had acquired no lien." This proposition is supported by *Uhl v. Dillon,* 10 Md. 500; *Nusbaum v. Stein,* 12 Md. 315; *Hubbard v. Hubbard,* 14 Md. 356; *Rich v. Levy,* 16 Md. 74; *Balls v. Balls,* 69 Md. 388,

16 A. 18; and other Maryland cases; and is recognized in *Lipskey v. Voloshen,* 155 Md. 139, 143, 141 A. 402, and in *Obrecht v. Ensor,* 162 Md. 391, 159 A. 899. Indeed, this is the rule in most of the state courts and in the federal courts. And in the federal courts it applies to corporate as well as individual debtors. In *Harkin v. Brundage,* 276 U. S. 36, 52, 48 S. Ct. 268, 274, 72 L. Ed. 457, in the opinion by Mr. Chief Justice Taft, it was said: "We do not wish what we have said to be taken as a general approval of the appointment of a receiver under the prayer of a bill brought by a simple contract creditor simply because it is consented to at the time by a defendant corporation. The true rule in equity is that under usual circumstances a creditor's bill may not be brought except by a judgment creditor after a return of *'nulla bona'* on execution. When a receiver has been thus irregularly appointed on such a bill without objection, and the administration has proceeded to such a point that it would be detrimental to all concerned to discharge the receiver, the receivership has been permitted to continue because not seasonably objected to," citing *Pusey & Jones Co. v. Hanssen,* 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; *In re Metropolitan Ry. Receivership,* 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403; *United States v. Butterworth-Judson Corp.,* 269 U. S. 504, 46 S. Ct. 179, 70 L. Ed. 380.

Indeed, the rule and practice is so universal as to individual debtors that it is not to be doubted that if a seasonable application had been made by any one in interest, the chancellor would have vacated the orders appointing the receivers. But it does not follow that an order erroneously passed is absolutely void, or that it should be set aside, to the prejudice of other creditors, and after responsibilities have been incurred thereunder by the receivers, at the instance of creditors, who, for their own purposes, with a view to obtaining preferences, have, with knowledge of the proceedings, delayed filing objections until judgments were obtained by them, and until their judgments were proof against attack. We have not been referred to, nor have we found, any case in this state in which it has been so held.

In *Dugan v. Baltimore,* 70 Md. 1, 16 A. 501, partition proceedings, in which a one-fourth interest of several owners in a tract of land had been sold under the partition statute, were attacked on the ground that the proceedings were void for lack of jurisdiction in the court. This court held that the proceeding was not authorized by the statute, as nothing less than all the interests could be sold: "But while such is our construction of the statute, we cannot agree that the court, in passing the decree of July 31st, had no jurisdiction of the subject-matter, and that the purchaser acquired no title to the interest sold under it. The bill was filed for the partition or sale of an undivided fourth part of the property in which the plaintiffs and defendants were tenants in common. It was filed under Code, art. 16, sec. 99. The court had a general jurisdiction to decree a sale of property held by co-tenants, and it had the jurisdiction to determine whether, under the Code, it had the power to sell an undivided interest in the property. Jurisdiction is the power to hear and determine. If the judgment of the court is erroneous, the remedy is by appeal * * *." So here, the court had a general jurisdiction to appoint receivers, and it had the jurisdiction to determine whether it had the power to appoint in the case made out by the bill of complaint. Undoubtedly a creditor or any one in interest had the right to intervene seasonably and question the legality of the order. But this is a right which can be waived. *Clark on Receivers* (2nd Ed.), 212; *Brown, Bonnell & Co. v. Lake Superior Iron Co.,* 134 U. S. 530, 10 S. Ct. 604, 33 L. Ed. 1021; *Hollins v. Brierfield Coal & Iron Co.,* 150 U. S. 371, 380, 14 S. Ct. 127, 37 L. Ed. 1113; *In re Metropolitan Ry. Receivership,* 208 U. S. 90, 109, 28 S. Ct. 219, 52 L. Ed. 403; *Horn v. Pere Marquette R. Co.* (C. C.) 151 Fed. 626, 633; *Harkin v. Brundage,* 276 U. S. 36, 52, 48 S. Ct. 268, 72 L. Ed. 457, and cases therein cited; *Reynes v. Dumont,* 130 U. S. 354, 9 S. Ct. 486, 32 L. Ed. 934. And we think in this case it was waived by tacit acquiescence in remaining silent to the detriment of others. We have not overlooked the fact that

in the Supreme Court cases cited the debtors were corporations. But as pointed out by Chief Justice Taft in *Harkin v. Brundage, supra,* the rule requiring the exhaustion of legal remedies before seeking the aid of a court of equity may be invoked by corporate debtors also. If it be found that the chancellor had jurisdiction to "hear and determine" whether he had power in the first instance, and that his assumption of jurisdiction was not void *ab initio,* then the considerations moving the court in the cases cited are also applicable to cases of individual debtors.

The appellants have cited authorities which seem to hold that procedure by simple contract creditors against individuals are void and may be attacked notwithstanding acquiescence, notably *Maxwell v. McDaniels* (C. C. A.), 184 Fed. 311, and *Hogsell v. Thompson,* 258 Pa. 85, 101 A. 941, 942. As to the first-mentioned case we are unable to accept the sharp distinction drawn by the learned judge in that case. The other easily may be distinguished from the present case. There, stress was laid upon the fact that "the courts of Pennsylvania do not possess general chancery powers, but exercise only such as have been conferred upon them by statute." In *Shryock v. Morriss,* 75 Md. 72, 76, 23 A. 68, it was held that where more than three years have elapsed since the passage of a decree, and rights have vested thereunder, such decree will not be vacated upon the ground of want of jurisdiction, unless there was such an absolute want of jurisdiction in the court as would render the decree void *ab initio.* And in that case the court distinguished between a contention (1) that such subject-matter is not the object of cognizance in a court of equity, or (2) that a court of equity is not the proper court to take cognizance of such rights, on the one hand; and a challenge of the rights of the plaintiff in the subject-matter of the suit, on the other hand; and held that in the first case objection on the ground of want of jurisdiction must be taken at the proper time and in the proper manner, thus necessarily holding that, when the objection is merely that the subject-matter is not the object of cognizance in a court of equity, a decree erroneously passed is not void *ab initio.*

Our conclusion is: (1) That these proceedings are not void *ab initio;* (2) that on the facts shown by the record the decree appealed from should not be disturbed. It goes without saying that the appellants are entitled to have the property of the insolvent in this state sold as expeditiously as possible, consistently with appellants' interest and that of all the creditors; and that taxes, interest, and expenses should not be allowed to accumulate on property, which apparently is producing no income, without some definite prospect of material advance in the near future. Of course, if all parties in interest agree to take the chance of waiting for better prices, another situation would be presented.

*Decree affirmed, with costs.*

PARKE, J., concurs in the result.