BACHMAN ET AL. *v.* LEMBACH, ADMINISTRATOR

[No. 54, October Term, 1948.]

36

*Decided January 13, 1949.*

38

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Isidor Roman,* with whom was *Jacob J. Edelman* on the brief, for the appellants.

*J. Calvin Carney,* with whom was *Stanley Scherr* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court No. 2 of Baltimore City, overruling a demurrer to a bill in equity for declaratory decree, discovery and accounting for the contents of a safe deposit box, determination of the ownership thereof, injunction and other relief. The material allegations of the bill, admitted by the demurrer, are as follows:

Julia M. Fahey rented a safe deposit box with the Baltimore National Bank in 1947, to which her sister, Frances T. Bachman, had joint access. At the time of Mrs. Fahey's death, on February 16, 1947, the entire contents of the box belonged to the decedent, and consisted of a platinum diamond ring, valued at $500.00, a diamond stickpin, valued at $250.00, a lady's gold watch, valued at $50.00, cash in the amount of $7,400.00, and 5 U. S. Defense Savings Bonds, series E, in the total amount of $200.00. Edward J. Fahey, husband of Julia M. Fahey, was appointed administrator of her estate on February 25, 1947, and demanded that Mrs. Bachman surrender the contents of the box to him. However, he died on March 28, 1947. The complainant, George W. Lembach, a brother of Mrs. Fahey, was thereupon appointed administrator *d. b. n.* of her estate, by the Orphans' Court of Baltimore City.

On February 17, 1947, the day after Mrs. Fahey's death, Frances T. Bachman entered the safe deposit box and removed its contents. She delivered the defense bonds and the lady's gold watch to Edward J. Fahey, and these items are now in the hands of the administrator *d. b. n.* She claims to have delivered the diamond stickpin to her brother Robert M. Lembach, the platinum diamond ring to Jean Kudrec, her daughter, and the cash in equal shares to Jean Kudrec and Gloria Bachman, her daughters, in accordance with instructions from the decedent. Julia M. Fahey left surviving her, as her next-of-kin, heirs-at-law and distributees, her husband, Edward J. Fahey, two brothers, two sisters and the children of a deceased brother. Upon demand for the contents of the safe deposit box, Frances T. Bachman refused to surrender the remaining items to the administrator *d. b. n.,* asserting that she had legal title thereto. The bill alleges that this claim is spurious.

The administrator *d. b. n.* petitioned the Orphans' Court, reciting the foregoing facts, for authority to take action to recover the property, and for the appointment of counsel. He alleged concealment of assets by Mrs. Bachman. Upon the passage of an appropriate order, these proceedings were instituted against Frances T. Bachman, Robert M. Lembach, Jean Kudrec and Gloria Bachman. Robert M. Lembach filed no pleading to the bill.

The appellants contend that this is not a proper case for the exercise of equitable jurisdiction, whether it be viewed as a proceeding for a declaratory decree as to title, or for the recovery of property the title to which is in dispute, and that there are adequate remedies at law in actions of replevin or trover, or for money had and received. The appellee contends that equity has jurisdiction under the principles laid down in the recent case of *Berman v. Leckner,* 188 Md. 321, 326, 52 A. 2d 464, 466.

In that case the bill by an administrator *d. b. n.* sought to recover from nine children of the decedent valuable

personal property consisting, in addition to furniture and ordinary household articles, of valuable paintings and antiques. The bill listed a number of these and prayed discovery of others; it referred particularly to an oil painting of Queen Anne reputed to be worth $300,000. It alleged collusion, concealment and fraud, and that the complainant did not know in whose possession the paintings, other than that of Queen Anne, were. In holding that equity had jurisdiction we said: "It is a general rule that equity will 'enforce the surrender and delivery of chattels in specie, which have been tortiously obtained or are wrongfully detained', where they consist of heirlooms, paintings or other works of art having a sentimental or unique value, or having no ready market value. * * * In Maryland, this rule has been extended to notes and other securities. * * * Whether Equity will assume a concurrent jurisdiction may depend upon the balance of convenience in a particular case. * * * Important considerations, in the recovery of assets of any type, may be the necessity for a discovery, the sufficiency of allegations as to fraud or collusion, and the possibility of avoiding a multiplicity of suits. * * * In the case at bar, we think the legal remedy would be inadequate or incomplete, and that the equity jurisdiction is properly invoked to bring about a recovery and redistribution of the assets in a more expeditious and convenient manner."

In the case at bar, the allegations of the bill are clearly less compelling than those in the *Berman* case. There is no showing of a need for discovery; on the contrary, the bill asserts that the diamond stick pin is in the possession of Robert M. Lembach, the diamond ring and $3700.00 in cash is in the possession of Jean Kudrec, and the remaining $3700.00 in cash is in the possession of Gloria Bachman. There is no complication or need for an accounting. The appellants argue that the articles of jewelry should be treated as heirlooms, of a sentimental or unique value, or having no ready market value. But there are no allegations to that effect in the bill, and we

think it would be stretching the doctrine to bring articles of such relatively insignificant value within a rule which depends, as we have said, upon a balance of convenience. In *Sykes v. Hughes*, 182 Md. 396, 35 A. 2d 132, 150 A. L. R. 87, where a bill was filed to compel the delivery of two rings, a necklace and a pin, removed from a safe deposit box, we held that the remedy at law was adequate, and dismissed the bill. Since there are no allegations of collusion, concealment or fraud, it would seem that the equitable jurisdiction, if it exists, must be found in the avoidance of a multiplicity of suits.

This court has never flatly decided that the avoidance of a multiplicity of suits is an independent ground of equitable jurisdiction. See *Allender v. Ghingher*, 170 Md. 156, 183 A. 610, and dissenting opinion. Compare *Wells v. Price*, 183 Md. 443, 453, 37 A. 2d 888. Pomeroy contends that it is. *1 Pomeroy, Eq. Jur.* (5th ed.) § 269a. But the learned author also states (p. 602) : "Undoubtedly for equity to exercise jurisdiction in such cases, the equity suit must result in a simplification or consolidation of the issues * * *." The question is discussed in an article by Chafee in *45 Harvard Law Review* 1297, 1321. After quoting Judge Woolsey to the effect that "the avoidance of multiplicity of suits of every device, which is jurisdictionally possible and practically convenient should be encouraged * * *" (*Munson Inland Lines v. Ins. Co. of North America*, D. C., 36 F. 2d 269, 271) he makes the comment that "we should go on to examine the available methods of handling a multiple controversy, and the practical policies which should influence a judge in choosing among these methods."

In *DiGiovanni v. Camden Fire Ins. Co.*, 296 U. S. 64, 70, 56 S. Ct. 1, 4, 80 L. Ed. 47, the Supreme Court denied relief in a case involving the cancellation of insurance policies where equitable jurisdiction depended upon the complainants' right to avoid "the possible inconvenience of trying two suits instead of one". Mr. Justice Stone, speaking for the court, said: "Avoidance of the burden of numerous suits at law between the same or different

parties, where the issues are substantially the same, is a recognized ground for equitable relief in the federal courts. * * * But the award of this remedy, as of other forms of equitable relief, is not controlled by rigid rules rigidly adhered to regardless of the end to be attained and the consequences of granting the relief sought. It rests in the sound discretion of a court of equity and theoretical inadequacy of the legal remedy may be outweighed by other considerations". Assuming, without deciding, that equitable jurisdiction in Maryland might rest solely upon the avoidance of a multiplicity of suits, we think the allegations of the bill show no practical necessity for its exercise.

This conclusion would seem to be reinforced by the fact that it would now be unnecessary to bring more than one action at law to adjudicate all the questions in issue. Under the General Rules of Practice and Procedure, III Joinder of Parties and Claims, Rule 2(a) (d) (e), adopted November 12, 1947, (Code, 1947 suppl. p. 2040) the plaintiff may join in one action at law as many legal claims as he may have against any defendant, and as many separate legal claims as he may have against more than one defendant "whenever any substantial question of law or fact common to all the claims will arise in the action." Separate judgments may be entered on the various claims. In the instant case the parties in possession all claim title by way of gift from the decedent, through her agent Mrs. Bachman. If they are unable to maintain their claim, separate judgments for the return of the jewelry and for money had and received could be entered by the law court, against each of the three parties in possession. In the absence of allegations in the bill we cannot assume that these judgments would be inadequate or ineffective.

It has been held that the extension of a new legal remedy does not oust the historical jurisdiction of equity, as, for example, for discovery and accounting. "But where there is no other ground of equity jurisdiction, a bill for discovery alone has been practically superseded

by an adequate, complete and sufficient remedy at law". *Johnson v. Bugle Coat, Apron & Linen Service,* 191 Md. 268, 278, 60 A. 2d 686, 690. In considering whether discretion should be exercised to avoid a multiplicity of suits, we cannot disregard the fact that the issues here involved could be determined in a single action at law. In the absence of other considerations we think there is no need shown for the exercise of the equitable jurisdiction.

The appellee contends, however, that the bill is maintainable in any event under the provisions of the Uniform Declaratory Judgment Act, Code, Art. 31A. That Act, however, does not abolish the distinction between law and equity, although it does provide that the existence of a remedy at law or in equity shall not preclude a declaratory judgment or decree in an appropriate case. We find nothing in the statute that would enlarge the equitable jurisdiction upon a mere prayer for declaratory relief, although such relief is available either at law or in equity, in an appropriate case. *Schultz v. Kaplan,* 189 Md. 402, 407, 56 A. 2d 17, 19. In the instant case it would seem that the relief sought is not in its nature declaratory, since the sole object is the recovery of the jewelry and cash alleged to have been misappropriated. In any event, "courts have some judicial discretion to refuse a declaratory judgment when it does not serve a useful purpose or terminate controversy". *Staley v. Safe Deposit Trust Co.,* 189 Md. 447, 456-457, 56 A. 2d 144, 149. Under the allegations of the bill we hold that relief of either sort can only be sought in a court of law.

> *Order reversed and bill dismissed, with costs.*