## PERLMUTTER *v.* MINSKOFF ET AL.

[No. 211, October Term, 1949.]

*Decided July 19, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON and HENDERSON, JJ.

*Hal C. B. Clagett* and *Warren E. Magee,* with whom were *Sasscer, Clagett & Duley* on the brief, for the appellant.

*Nicholas Orem, Jr.,* with whom were *T. Howard Duckett* and *Duckett, Gill & Anderson* on the brief, for Parkway Terrace, Inc.

*H. Winship Wheatley, Jr.,* with whom were *H. Winship Wheatley* and *John J. Wilson* on the brief, for the Home Life Insurance Company.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Morris Perlmutter from a decree sustaining appellee's demurrer and dismissing appellant's bill of complaint as amended and supplemented, without leave to further amend. In referring to appellees and defendants in this case we are not referring to Home Life Insurance Company, which is primarily a stakeholder. The appellant claimed money due under contracts.

The bill, as amended and supplemented, alleges the following facts which are taken in part from the facts as summarized by the appellant, and in part from the amended and supplemental bill.

"The individual appellees were in truth and in fact utilizing the various bodies corporate named and the M & P Construction Company as schemes for hiding and secreting their assets and to prevent creditors from obtaining payment of their just claims. Appellees obtained construction loans to construct the Parkway Terrace Project. These loans were insured by FHA. Appellees acquired nineteen acres of land in Maryland for the project. Appellees used the front M & P Construction Company as a 'dummy' general contractor."

"Appellant entered into three agreements to perform all concrete, masonry and carpentry work on the Parkway

Terrace Project." Appellant has completed or has substantially completed all of the terms and conditions of the aforesaid agreements. "Appellees have breached said contracts. * * * The funds involved are construction funds insured by FHA on the construction of the Parkway Terrace Project. When disputes occurred between appellant and appellees an arbitration agreement was executed between the parties. Appellees have refused to abide by the decisions of the arbitrators thereunder or to arbitrate further in violation of the express terms of the arbitration agreement."

"Although the individual defendants, Leo Allen Minskoff, Henry H. Minskoff and Jerome Minskoff, may have certain capital assets which a Certified Public Accountant, on or about March 1, 1949, has valued at $1,793,469, nevertheless the fact remains that said defendants do not have sufficient funds to pay current obligations now due and payable in connection with the construction, operation, and maintenance of said Parkway Terrace Project, and none of said hidden assets are within the control or under the jurisdiction of this Court, other than the equity, if any, of said defendants in said Parkway Terrace Project."

"Appellees obtained four releases of liens from appellant on the promise to pay the withheld 10% of the construction funds on Sections A and D to appellant when obtained by appellees. Appellees used the two releases on Sections A and D, obtained the 10% withheld on Parkway Terrace, Section A, Inc., and Parkway Terrace, Section D, Inc., but breached the agreement to pay appellant his 10% and refused to pay this sum to appellant. Appellant seeks to have appellees enjoined from using the remaining releases to obtain the remaining 10%, because of this breach of faith, and alleges if appellees use these remaining releases of liens and obtain the balance due they will dissipate, secrete and hide said funds and remove them from the jurisdiction. Further appellees are hiding their assets, are using various sets of books to hide and secrete their assets, and an accounting is

necessary of the various books and accounts of appellees, and that such an accounting will show fraud and a wrongful diversion of the funds allocated to this project for construction purposes." It is alleged that appellees' outstanding obligations, including $167,340.87 due appellant, exceed $475,000.

The appellant asks for injunctive relief; the appointment of a receiver to take over the assets of the defendants, for an accounting, for discovery, and a decree requiring appellees to pay the amount claimed by the appellant. Filed with the bill, among other exhibits, are the three contracts and the supplemental arbitration agreement entered into by the appellant, as subcontractor, with the three individual Minskoffs, appellees, trading as M & P Construction Company, as general contractor.

Of course, all well pleaded matters in the bill of complaint as amended and supplemented are for the purposes of the demurrer admitted as true. *Safe Deposit & Trust Company v. Coyle*, 133 Md. 343, 351, 105 A. 308.

As to appellant's allegation that the appellees have breached the contracts in this case, each contract is for an entire project, Park Terrace Apartments Sections A, B, C and D. The contracts cannot be divided into sections. The claim in this case and the dispute arise over the final 10 percent payments. All three of the contracts provide that the 10 percent payment now in dispute is to be paid upon approval by the Federal Housing Administration. There is no allegation in the bill that the work has been accepted by and approved by the Federal Housing Administration. Nor does appellant allege that he has completed his part of the contract. He says: "That your Orator has completed, or has substantially completed all of the terms and conditions required of him under and by virtue of the terms of the aforesaid Agreements." Substantial compliance does not fulfill the terms of an agreement. Of course, under the terms thereof, there must be full compliance before the final amount payable under the contracts is due.

The bill does not allege that the appellees are insolvent. Appellant alleges that the appellees "do not have sufficient funds on hand or due them under the terms of the construction loans pertaining to said projects to pay the obligations which are justly due and owing by said defendants in connection with the construction of said Parkway Terrace Project." The bill does not allege that there are no funds to become due when the project is fully completed. It is further alleged that the appellees "have, and own no assets known to your Orator, and located within the jurisdiction of this Court, except the Parkway Terrace Project described in the pleadings in this cause." Appellant does not state the appellees have and own no assets with which to pay debts. He qualifies such a statement by limiting the assets to those located in the State of Maryland. The only real allegation of insolvency alleged, is that the appellees "are insolvent and have no assets located within the jurisdiction of the Court which are available to pay just creditors * * *." The insolvency here alleged is qualified to assets "available" in Maryland. There is no allegation that the appellees do not have assets elsewhere. It is further alleged in the supplemental bill: "For the entire month of November, and as of December 6, 1949, said defendants * * * were in default under the terms of the construction mortgages on three of the Sections involved in said project * * *." The supplemental bill was filed December 16, 1949. There is no allegation that these mortgages were in default at the time of the filing of the supplemental bill. In fact that allegation having been put in the past tense the contrary is indicated. Finally we find on the question of insolvency that it is alleged in the supplemental bill that the defendants "may have certain capital assets which a Certified Public Accountant, on or about March 1, 1949, has valued at $1,793,469.00 * * *." There is no allegation that defendants did not have these assets at the time of the filing of the supplemental bill. We find therefore that insolvency of the appellees is not here alleged.

As to the allegations in reference to appellant signing release of liens as to the final 10 percent due, we find that all three contracts contained the following: "The Contractor (Morris Perlmutter) agrees to sign the Waiver of Liens before he receives his final payment, it being understood that the Contractor shall receive his final payment when the Owner (Appellees) receives his final compliance from F.H.A. The Contractor agrees to sign the Waiver of Liens before final payment in order to facilitate the Owner receiving his final compliance from F.H.A. Any extras which the Contractor might have shall also be paid at the final payment." Therefore, appellant originally expressly contracted to sign these waivers of liens. *Dipaula v. Green,* 116 Md. 491, 494, 82 A. 205. By the express terms of the contract, appellant's right to a mechanic's lien extended only to the first 90 percent of the contract price, which apparently has been paid. No mechanic's lien had been filed by appellant.

After disputes had occurred between the parties here an arbitration agreement was executed. An examination of this arbitration agreement shows that it reiterates the fact that 90 percent of all labor and material billed the preceding month was to be paid "on the 10th of each and every month, with the remaining 10% to be paid by the Owner (Appellees) to the Contractor (Perlmutter) upon final acceptance and approval by the Federal Housing Administration". As it is admitted that the 90 percent due has been paid and, as previously stated herein, there is no allegation that the "Contractor" has completed his part of the contract and that the projects have been finally accepted and approved by the Federal Housing Administration, the allegations about this arbitration contract are plainly demurrable. As to payment for extra work, according to the allegations of paragraph 2 of the amended and supplemental bill "the sum of $36,602.25 for extra work, labor and materials ordered and requested by the said defendants, but not included in the terms of the aforesaid three con-

struction agreements, which sum for extras, according to the terms of the aforesaid three construction contracts, 'shall also be paid at final payment' ". As previously set out, according to the allegations herein final payment is not yet due.

Appellant contends that the appellees are hiding their assets and using various sets of books. The allegations of the bill are merely that the appellees are taking money out of the State. As previously pointed out there is no allegation of insolvency. Nor is there any allegation that the appellant is a lien creditor or that appellees have made any fraudulent conveyances. There is no allegation that appellees keep different sets of books. As to the removal of funds out of the State we still find the allegation as previously set forth that appellees may have capital assets of $1,793,469. There are not sufficient facts here alleged to constitute fraud. It has been often stated by this Court that a charge of fraud must be supported by facts sufficient to justify the inference of fraud. *Blondheim v. Moore*, 11 Md. 365, 374; *Hubbard v. Hubbard*, 14 Md. 356; *Kinsey v. Drury*, 141 Md. 684, 691, 119 A. 646. The facts here are not such as to justify an accounting or discovery. Possibly the accounting here is complex. But complexity of accounting alone is not the sole consideration to give equity jurisdiction. *Johnson & Higgins v. Simpson*, 165 Md. 83, 88, 166 A. 617; *Coster v. Arrow Building & Loan Ass'n*, 184 Md. 342, 350, 41 A. 2d 83.

In this case appellant appears to be a general creditor. *Uhl v. Dillon*, 10 Md. 500, 69 Am. Dec. 172; *Obrecht v. Ensor*, 162 Md. 391, 393, 159 A. 899. According to the allegations he has no equitable lien. Here, appellant's claim appears to be for money due under contracts. This money due seems to be nothing more than a debt. Appellant contends that by virtue of Code, 1939, Article 16, Section 92, he should not be left to his remedy at law, but should be granted an injunction. However, that Section provides: "No court shall refuse to issue a mandamus or injunction on the mere ground that the party asking

for the same has an adequate remedy in *damages* * * *."
(Emphasis supplied.) The claim here is for money
owing as the result of a contractual obligation. There
is no claim here for damages. Appellants rely on *Universal, etc., Corp., Inc. v. Felser,* 179 Md. 635, 22 A. 2d
448. The claim in that case was for damages and therefore it is not in point here. This Court pointed out in
the case of *Frederick County Nat. Bank v. Shafer,* 87 Md.
54, 58, 39 A. 320, 321, that this statute "has relation to
cases where damages, as contradistinguished from a debt
are involved." *Conner v. Groh,* 90 Md. 674, 684, 45 A.
1024. A creditor, before judgment, who became such
under a general contract, is not entitled to an injunction
or a receiver. *Blake v. Gorsuch,* 166 Md. 647, 654, 171
A. 862; *Mathias v. Segaloff,* 187 Md. 690, 696, 51 A. 2d
654.

At the argument in this Court, appellant strenuously
contended that in order to do justice in this case the
difference between law and equity should be ignored and
jurisdiction should be assumed by the equity court. It
was said in *Fooks' Executors v. Ghingher,* 172 Md. 612,
at page 625, 192 A. 782, at page 788: "Under the Constitution, the entire judicial power of the state is vested
in the circuit courts for the counties, certain courts in
Baltimore City, orphans' courts, the Court of Appeals,
and justices of the peace. Const. art. 4, § 1. In the
counties the circuit courts are courts of general jurisdiction, Id. § 19, and, in so far as it does not violate the
constitutional guarantee of trial by jury, there is no
specific limitation upon the power of the Legislature to
fix the jurisdiction respectively of the law and the equity
sides of such courts. But until fixed by some legislative
enactment, the limits of the respective jurisdictions of
those two sides of the same court are fixed by the ordinary
common law distinction between courts of law and courts
of chancery."

The appellant contends that, if the present bills in this
case are held to be demurrable, he should be given a
further right to amend. The chancellor, of course, had

the right to allow an amendment. Code, 1939, Article 16, Section 18. General Equity Rule 19. He availed himself of this right in allowing an amendment and a supplement to the bill. This is discretionary with the chancellor. Article 16, Section 182, 1939 Code. It has been stated many times by this Court that the discretion given the chancellor to allow or refuse an amendment will not be reviewed in the absence of abuse. *Funkhouser v. Mooers,* 179 Md. 266, 269, 18 A. 2d 205; *Dougherty v. Dougherty,* 187 Md. 21, 29, 48 A. 2d 451. The chancellor in this case stated that, as the appellant had made two efforts to set up a good cause of action and had failed, further amendment should not be allowed. The chancellor doubtless thought that amendment could make no difference in the result. *Kernan v. Carter,* 132 Md. 577, 585, 594, 104 A. 530. We do not find that the chancellor in this case abused his discretion. He left appellant without prejudice to bring a suit at law, which he has done. The decree will be affirmed as we find no error.

*Decree affirmed, with costs.*