## DORMAY CONSTRUCTION CORPORATION ET AL. *v.* DORIC COMPANY

[No. 92, September Term, 1959.]

146

*Decided December 15, 1959.*

*Motion for rehearing filed January 14, 1960, denied January 19, 1960.*

148

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Alexander Stark* and *Jack L. Grossman* for the appellants.

*Warren J. Weinberger,* with whom was *Sidney Waldman*
on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The principal question raised on this appeal is whether the
case is or is not within the jurisdiction of equity. Closely
related thereto is the appellants' contention that the trial
court erred in refusing to transfer the case from equity to law.
Other questions pertain to the sustaining of objections to
parol testimony relating to the contract here involved and to
the sufficiency of the evidence to support the claim of the
appellee.

The Doric Company (Doric), the appellee, brought a suit
in equity against Dormay Construction Corporation (Dor-
may) and Artistic Homes, Inc. (Artistic), the appellants,
seeking an accounting, discovery through examination of the
defendants' books, an injunction against dissipation of funds
and a monetary decree. The trial court awarded Doric a
monetary decree for $900, and Dormay and Artistic appealed.

The printed record extract shows that before the taking
of testimony began, some stipulations had been entered into
between the parties. As a result, after opening statements
had been made on behalf of the respective parties the trial
judge pointed out, just as the plaintiff started to present its
case that it was unnecessary to prove a contract between the
parties, since everyone agreed the contract [which had been
filed with the bill as an exhibit] had been signed. After some
discussion, which is not recorded, counsel for the defendant

(Mr. Stark) said: "Then it is our understanding that the plaintiff is resting on the pleadings and stipulations." The court replied, "Yes, that is right"; and the trial proceeded accordingly, with the defendants at once going into the presentation of their evidence.

The stipulations are not in the record. There is in the record, however, a comment or certificate by the trial judge filed after the appeal had been taken which at least shows something of the general nature of the stipulations. (It is further referred to below.) The appellants asserted in this Court that the record contained no proof of the plaintiff's claim and urged this as a ground for reversal. They seem to have sought to transfer to this Court the burden of proof which rested on the plaintiff in the trial court and not to have realized that, on appeal, it was their burden to show, if they could, that the finding of the trial court on the facts was in error, whether the facts were presented by stipulation or otherwise. They have made no effort to show what facts were agreed to by the stipulations or to supply in any way the deficiencies in the record which they now assert.[1] They have thus failed to present any basis for review by this Court of the alleged insufficiency of the evidence to support the plaintiff's claim, and this objection will not be further considered. *Banks v. State,* 203 Md. 488, 102 A. 2d 267; *Newark Trust Co. v. Trimble,* 215 Md. 502, 138 A. 2d 919. Cf. *Jefferson v. State,* 218 Md. 397, 147 A. 2d 204, where a substitute for a stenographic transcript was furnished by agreement, with the approval of the trial court.

The record does show that Dormay and Artistic were engaged in the development of three subdivisions in Anne Arundel County and that on June 28, 1956, they entered into a written agreement with Doric, which is called a "Listing Contract." Under this contract Doric was authorized to sell property in any of these subdivisions "owned, leased or otherwise controlled, and being improved by" Dormay or Artistic or "that may result out of the development" thereof. This

---

1. See Maryland Rules, Rules 826-828 relating to the record on appeal.

authority was to continue for one year, subject to termination by either party on fifteen days' written notice. The contract provided that with respect to sales made during the term or any extension thereof, Dormay and Artistic should pay to Doric a commission of $150 each on sales of improved subdivided lots and 5% of the purchase price on sales of unimproved subdivision lots. These provisions also applied to sales made on or after June 21, 1956. The contract further contained provisions to protect Doric in some circumstances as to sales to purchasers who became interested in properties in these subdivisions during the life of the contract, though the sales were not consummated until after its termination, if they were consummated within six months thereafter.

The provisions of the contract upon which the decree herein is based pertain to sales made prior to June 21, 1956. They were in brief: that for any such sales, "notwithstanding any other terms of this agreement [Doric] shall be due a commission of $75 per unit", and that all commissions should be "payable at the time of the settlement by the ultimate purchaser of the respective leasehold property."

The contract was terminated at some time in July, 1956. The trial court rejected claims made by Doric as to some eighteen sales made on or after June 21, 1956, but upheld Doric's claim as to twelve sales negotiated before that date and held that the termination of the contract did not cancel the obligations of Dormay and Artistic to pay commissions on the twelve sales.

The appellants point out that the contract does not specify any consideration for their promise to pay commissions at the specified rate for sales made before June 21, 1956. They sought to show obligations resting upon the appellee which were not expressed in the contract and to show non-performance thereof. They did not assert in the trial court any lack of consideration as a defense. It would, therefore, be too late to assert it on appeal, nor have they attempted to do so.[2] We think that the trial court was correct in excluding evidence as to nonperformance of the alleged obligations which

2. The contract of June 28, 1956, seems to have been entered into to replace some prior agreement, to compromise or settle rights

were not stated in the contract. This is simply an application of the parol evidence rule. *Glass v. Doctors Hospital, Inc.,* 213 Md. 44, 131 A. 2d 254; *Eastover Stores, Inc. v. Minnix,* 219 Md. 658, 150 A. 2d 884.

While we are considering rulings on evidence we may also note the appellants' complaint based upon the sustaining of objections to questions as to what was said by Doric's representative prior to the execution of the contract. The questions objected to were said to have been directed to showing bad faith in the matter *ab initio.* There is, however, no proffer, and we cannot on the record before us tell what evidence the appellants proposed to adduce and so cannot rule on its admissibility. We note, however, that the answer did not set up any defense based upon fraud.

The question of equity jurisdiction was raised in the answer (as permitted by Maryland Rules, Rule 372 c 1). It was renewed by a motion to dismiss. As stated above, it is the principal question in the case.

The allegations of the bill as to the financial difficulties of the appellants fall short of allegations of insolvency, and there were no allegations of any equitable lien in the plaintiff. These allegations in and of themselves appear insufficient to support equitable relief. *Perlmutter v. Minskoff,* 196 Md. 99, 75 A. 2d 129. We note that there was a prayer for an injunction against the defendants' disbursing funds for any purpose other than for the purchase of materials or payment of wages and that the officers should be specifically enjoined from receiving corporate funds for any purpose. We also note that none of the officers were joined as parties. Any basis for the issuance of the injunction sought is far from clear, and for purposes of this opinion we shall assume that it was insufficient.

The remaining bases for equity jurisdiction are discovery and accounting. It is true that this Court has stated that "where there is no other ground of equity jurisdiction, a bill for discovery alone has been practically superseded by an ade-

---

and liabilities already accrued and to govern future transactions. It was apparently occasioned by a change in control of Dormay and Artistic. The record before us leaves these matters obscure.

quate, complete and sufficient remedy at law." *Johnson v. Bugle Coat, Apron & Linen Service, Inc.,* 191 Md. 268, 278, 60 A. 2d 686; *Bachman v. Lembach,* 192 Md. 35, 42-43, 63 A. 2d 641. The cases cited in support of this statement in *Johnson v. Bugle* all antedate our present discovery rules (Maryland Rules, Rule 400, *et seq.,* of which Rules 401, 417 and 419 seem most pertinent) and their counterparts in the General Rules of Practice and Procedure adopted in 1941, which were in effect when *Johnson v. Bugle* and *Bachman v. Lembach* were decided. We have had some provisions for discovery at law since the enactment of Ch. 43 (Sec. 7) of the Acts of 1796, though our modern rules are broader in scope than their predecessors. See the Reporter's Explanatory Notes under the heading "Maryland Discovery Procedure" accompanying the General Rules of Practice and Procedure adopted in 1941, Code (1947 Supp.), pp. 2062-2071.

In *Perlmutter v. Minskoff, supra,* the suit was held to be merely a suit by a general creditor to recover money due under· several contracts. The bill failed to allege sufficiently any ground for equitable jurisdiction apart from discovery, and all that was needed by way of discovery was readily available in an action at law. This Court affirmed an order sustaining a demurrer.

It is to be noted, however, that our present rules of practice and procedure, the Maryland Rules, have not abolished the distinction between law and equity. As was said in *Johnson v. Bugle, supra,* 191 Md. 278, just before the passage which we have quoted: "Equity jurisdiction for discovery *and accounting* is not impaired by improved facilities for discovery at law. *Goldsborough v. County Trust Co.,* 180 Md. 59, 61, 22 A. 2d 920; *Nagel v. Todd, supra,* 185 Md. [512], 518, 45 A. 2d 326." This, too, was stated in *Bachman v. Lembach, supra,* 192 Md. at 42. Both of the cases cited in *Johnson v. Bugle* fully support the statement of this rule, and there is an extensive collection of cases sustaining equity jurisdiction in Judge Henderson's opinion in *Nagel v. Todd,* 185 Md. at 518, some of which are referred to below. As was held in *Legum v. Campbell,* 149 Md. 148, 150, 131 A. 147 (cited in

*Nagel v. Todd*), the existence of a right to bring an action at law will not oust the jurisdiction of equity if there is any ground upon which relief in equity may be invoked. See also *Union Passenger Ry. Co. v. City of Baltimore,* 71 Md. 238, 17 A. 933, holding that then existing statutory provisions for discovery at law did not oust equity jurisdiction to require an accounting by a street railway company to a municipality for receipts derived from operations under a franchise to use streets of the city.

The question narrows down to whether or not there were sufficient grounds to support a bill for an accounting. Whether a principal has a duty to keep and render accounts of the amounts due from him to the agent depends upon the method of compensation, the fact that the agent does or does not operate an independent business, the customs of the business and other similar factors. Restatement (Second), *Agency* § 436. Comment a under that Section states that the principal may be under an obligation to do so in the case of traveling salesmen whose compensation is based upon completed sales; and if the principal does not supply the information, the agent may be entitled to maintain a bill for discovery or an accounting or the principal may (under modern statutes) be required to answer interrogatories (*ibid.,* Comment c). Here we think the principals were required to keep records of sales consummated which (as in the case of traveling salesmen) would be matters within the knowledge of the principals, but which might not—and after the termination of the contract almost surely would not—be within the knowledge of the agent.

We think that in this situation there was a relationship of trust and confidence sufficient to entitle the agent to maintain a suit in equity for an accounting. *Nagel v. Todd, supra* (principal vs. agent); *Silver Hill Sand & Gravel Co. v. Carozza Corporation,* 184 Md. 226, 40 A. 2d 311 (lessor vs. lessee; discovery and accounting; also multiplicity of suits); *Goldsborough v. County Trust Co., supra* (agent vs. principal); *Hill v. Pinder,* 150 Md. 397, 133 A. 134 (principal vs. agent); *Legum v. Campbell, supra* (employee vs. em-

154

ployer; agreement to share profits) ; *Anderson v. Watson,* 141 Md. 217, 118 A. 569 (employees vs. employer).

The certificate filed by the trial judge with regard to the stipulations shows that the parties stipulated that there were eighteen items in one category and twelve in another as to which the plaintiff claimed commissions. It may be inferred, though the record before us does not make it clear, that the stipulations showed that these twelve sales actually had been consummated, that such information was included in the data as to which the plaintiff sought discovery and an accounting, and that the information, though previously demanded, had been refused and was forthcoming immediately before the trial (and only then) as a result of the suit and the imminence of trial. Such discovery and accounting, we think, was within the jurisdiction of equity; and the fact that the need for a decree therefor was obviated by the information then being furnished, would not prevent the equity court from awarding the remaining relief sought—a monetary decree. *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 224, 37 A. 2d 305, and cases therein cited. See also *Eastern Woodworks, Inc. v. Vance,* 206 Md. 419, 433, 112 A. 2d 231.

The appellants' final contention based upon the refusal of the trial court to transfer the case from equity to law is disposed of by what we have already said as to the existence of equity jurisdiction.

*Decree affirmed, with costs.*