899 A.2d 965

**James K. HART**

v.

**Cynthia M. HART.**

**No. 2496, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

June 2, 2006.

Stephen P. Krohn (Krohn & Krissoff, PA, on brief), Annapolis, for appellant.

Clara M. Mereston, Annapolis, for appellee.

Panel MURPHY, C.J., ADKINS, RAYMOND G. THIEME, JR., (Retired, Specially Assigned) JJ.

**ADKINS, J.**

Appellant James K. Hart challenges a judgment of divorce awarding appellee Cynthia M. Hart, *inter alia*, two-thirds of the proceeds from the sale of the family home and indefinite alimony. We shall vacate that judgment, and in doing so, hold that a court ordering the sale of a jointly titled family home once the use and possession period for that property expires may not divide those sale proceeds unequally rather than adjusting the equities between the parties via a separate monetary award.

## FACTS AND LEGAL PROCEEDINGS

James and Cynthia Hart divorced after 24 years of marriage. They resolved custody, visitation, and support issues regarding their children,[1] only one of whom remained a minor at the time of the divorce. Our focus is on the property matters that were resolved at trial and are the subject of this appeal.

During their separation, the Harts agreed that Cynthia would have use and possession of the marital home held as tenants by the entireties, which they stipulated to be worth $356,000. Under the terms of the agreement, Cynthia's use and possession period ends August 15, 2006, shortly before the youngest Hart child reaches his 18th birthday.

At trial, Cynthia Hart was 52. Before she married, she earned a master's degree in education and reading. During the marriage, she worked full time in banking until 1993, with her highest salary being $26,000. Thereafter, she worked in educational positions that did not require teacher certification, which she had not obtained. In the three years before trial, Cynthia earned $15,000 in salary plus an annual dividend of $6,000, working as a language enrichment specialist.

---

1. The eldest two children, Gregory and Shanna, were over 18 by then. Brady, born April 23, 1993, died October 1, 1995. Patrick, born September 6, 1988, was the only child living at home after the parties separated on November 9, 2002.

In June 2004, as a result of lost funding, Cynthia's position was terminated. She unsuccessfully applied for jobs in education and banking. Eventually, she began the process of completing requirements for teaching certification, which she estimated would take two years and yield a starting salary of $34,975.00 plus eventual eligibility for pension benefits.

During the marriage, Cynthia inherited money from her mother's estate. She spent approximately $120,000 on family expenses, including paying private school tuition for the children. At the time of trial, she had approximately $567,000 of her inheritance remaining.

James Hart was 50 at the time of trial. During the marriage, James completed his bachelor's degree and earned a masters in business administration in the evenings. He simultaneously worked full time during the day for Northrop Grumman. At trial, James was in his 29th year at Northrup Grumman, earning an annual salary of $112,000. He also earned retirement benefits and a $15,000 annual bonus in 2004.

James and Cynthia had a comfortable but not extravagant lifestyle during the marriage. They purchased a vacation condominium in Ocean City. They also lived in a series of three homes that pertain to this appeal.

In 1977, before the marriage, James bought a home on Summit Road. The couple lived there when they married in 1980.

In 1981, they purchased a house on Whitney Road. While in high school, Cynthia had received a personal injury settlement; she used $29,000 of this money to make the down payment on the Whitney Road property. The Harts lived there until they purchased their final marital home on Albacore Drive.

Because the Whitney Road home had not been sold before settlement on Albacore Drive, the Harts borrowed $40,000 from Cynthia's mother and took a home equity loan against the Whitney Road property in order to complete the Albacore

Drive purchase. These two loans were repaid entirely with proceeds of the subsequent sale of the Whitney Road house.

James eventually sold his Summit Road house sometime after the move to Albacore Drive. He claims that he deposited $30,000 in proceeds from that sale into Cynthia's individual bank account, and that the couple then used $26,000 of those funds to make mortgage payments on Albacore Drive. Cynthia counters that James told her that he sold the Summit Road property for a loss, and denies that any money from that sale was deposited into the marital account or used to make mortgage payments on the Albacore Road property.

In the summer of 2000, Cynthia learned that James was having an extramarital affair. According to Cynthia, James then deceived her into believing that he ended his adulterous relationship. Instead, he continued to live in the marital home and have marital relations with her, at the same time he maintained a sexual relationship with his paramour and made plans for divorce. During this time, Cynthia paid family bills from her inheritance, including all mortgage payments and private school tuition.

James filed for divorce on July 25, 2003. Until October 2003, James deposited his entire paycheck into the marital checking account. He continued to pay some household expenses thereafter.

By May 2004, Cynthia had lost her job. James was paying only utility bills that were in his name. Cynthia paid all other expenses for her, their minor child, and the Albacore Drive home from her inheritance.

After a four day trial, the Circuit Court for Anne Arundel County entered a judgment on December 21, 2004. The court ordered the Albacore Drive home to be sold at the end of the use and possession period, and that the net sale proceeds be divided unequally, with two-thirds allocated to Cynthia and one-third to James. The court also awarded Cynthia rehabili-

tative and indefinite alimony.[2]   James noted this appeal,[3] raising several issues that we consolidate and restate as follows:

I.   Did the trial court err in awarding Cynthia a two-thirds interest in the net proceeds from the sale of the family home following the use and possession period?

II.   Did the trial court err in awarding Cynthia indefinite alimony?

We shall vacate the judgment because the trial court erred in dividing the home sale proceeds unequally, possibly in lieu of making a separate monetary award.   Although there was evidence that might support an indefinite alimony award, we cannot affirm the decision to make such an award because the trial court failed to make the threshold finding that, even after a period of rehabilitative alimony, Cynthia's living standard would still be unconscionably lower than James's.

## DISCUSSION

### I.

**Unequal Division Of S ale Proceeds From Family Home**

#### A.

**Sale Of Family Home Held As Tenants
By The Entireties Following Use
And Possession Order**

■   Under FL sections 8–203 to 8–205, Maryland courts must (1) determine which of a divorcing couple's property is marital property, (2) value such property, and then (3) determine whether to grant a monetary award "as an adjustment of the equities and rights of the parties[.]"   *See Kelly v. Kelly,* 153 Md.App. 260, 270, 836 A.2d 695 (2003); FL § 8–202 to 8–

---

2.   Cynthia moved for reconsideration or to amend the judgment.   After a hearing, James's alimony arrearage was adjusted.   That aspect of the judgment has not been challenged in this appeal.

3.   Cynthia withdrew her cross-appeal before briefing.

205. FL section 8–202(b)(2) provides that, after completing the first step of this analysis, a court may, "as to any property owned by both of the parties, order a ... sale instead of partition and a division of the proceeds." FL § 8–202(b)(2).

That is what the trial court elected to do in this case. With respect to the family home on Albacore Drive, which the parties stipulated was titled as tenants by the entireties and worth $356,000 at trial (without any mortgage), the trial court ordered that,

> in June, 2006, the Marital Home shall be listed for sale....
> The parties legally divide the cost of any repairs. ....
> Settlement of the property shall not take place before August 15, 2006 unless otherwise agreed upon by the parties. **The net proceeds shall be divided with [Cynthia] receiving two-thirds (2/3) of the net proceeds and [James] receiving one-third (1/3)** of the net proceeds.... remaining after all costs of sale. (Emphasis added.)

■ The 20 month delay in the sale of the marital home reflects that the court simultaneously awarded Cynthia use and possession of the family home "until the sale and settlement of the property[.]" There is no question that the court had authority to do so. When, as in this case, jointly titled marital real property qualifies as a "family home,"[4] the court may award use and possession of that property to the spouse with physical custody of the parties' minor child, for a period of up to three years after the divorce. *See* FL § 8–208(a), § 8–210(a).[5]

---

**4.** "Family home" is defined
as property in this State that:
(i) was used as the principal residence of the parties when they lived together;
(ii) is owned ... by 1 or both of the parties at the time of the proceeding; and
(iii) is being used ... as a principal residence by 1 or both of the parties and a child.
FL § 8–201(c).

**5.** Before 1987, courts were statutorily precluded from considering the family home to be marital property for as long as the home was subject

The aftermath of such an order is governed by FL section 8–210(c), which provides:

> When a provision that concerns the family home or family use personal property terminates, the court shall treat the property as marital property if the property qualifies as marital property, and **adjust the equities and rights of the parties concerning the property as set out in § 8–205 of this subtitle.** (Emphasis added.)

FL section 8–205, in turn, authorizes the court to make a monetary award:

> (a)(1) Subject to the provisions of subsection (b) of this section, after the court determines which property is marital property, and the value of the marital property, **the court may ... grant a monetary award ... as an adjustment of the equities and rights of the parties concerning marital property,** whether or not alimony is awarded....
>
> (c) The court may reduce to a judgment any monetary award made under this section, to the extent that any part of the award is due and owing. (Emphasis added.)

"[T]he purpose of the monetary award ... is to achieve equity between the spouses where one spouse has a significantly higher percentage of the marital assets titled his name." *Long v. Long,* 129 Md.App. 554, 577–78, 743 A.2d 281 (2000). Granting a monetary award allows a court "to counterbalance any unfairness that may result from the actual distribution of property acquired during the marriage strictly in accordance with its title." *Ward v. Ward,* 52 Md.App. 336, 339, 449 A.2d 443 (1982). Consequently, when deciding

---

to a use and possession order. *See* former Md.Code § 3–6A–05(a)(2)("the family home shall not be considered marital property so long as it is the subject of a use and possession order"); former FL § 8–203(c) (recodification of the same provision); 1986 Md. Laws, ch. 174 (repealing former § 8–203(c)); *Barr v. Barr,* 58 Md.App. 569, 587, 473 A.2d 1300, *cert. denied,* 300 Md. 794, 481 A.2d 239 (1984)(repealed subsection "seems to make clear that such determination ... is not to be considered as long as such property is subject to the order"). Since then, Maryland courts have treated family homes as marital property both before and during the use and possession period.

whether to make an award, the court has broad discretion to reach an equitable result. *See Freese v. Freese,* 89 Md.App. 144, 153, 597 A.2d 1007 (1991), *cert. denied,* 325 Md. 396, 601 A.2d 129 (1992).

■ The exercise of such discretion, however, must be made using correct legal standards. The Marital Property Act, codified at FL § 8–101 et seq., creates the three-step method outlined above for disposing of marital property. In step three, when deciding whether to make a monetary award (and if so, in what amount and on what terms), courts must comply with FL § 8–205, which requires the court to consider each of twelve enumerated factors,[6] including the value of the family home, as well as the existence of "any award . . . with respect to . . . the family home[.]" *See* FL § 8–205(a); FL § 8–205(b)(10); John F. Fader, III & Richard J. Gilbert, *Maryland Family Law* § 15–5, at 15–19 (3d ed. 2000 & 2004 Cum.Supp.). On appeal, we review the court's grant of a

---

6. FL section 8–205(b) provides:
   The court shall determine the amount and the method of payment of a monetary award, . . . after considering each of the following factors:
   (1) the contributions, monetary and nonmonetary, of each party to the well-being of the family;
   (2) the value of all property interests of each party;
   (3) the economic circumstances of each party at the time the award is to be made;
   (4) the circumstances that contributed to the estrangement of the parties;
   (5) the duration of the marriage;
   (6) the age of each party;
   (7) the physical and mental condition of each party;
   (8) how and when specific marital property . . . . was acquired, including the effort expended by each party in accumulating the marital property . . . ;
   (9) the contribution by either party of property described in § 8–201(e)(3) of this subtitle to the acquisition of real property held by the parties as tenants by the entirety;
   (10) any award of alimony and any award or other provision that the court has made with respect to family use personal property or the family home; and
   (11) any other factor that the court considers necessary or appropriate to consider in order to arrive at a fair and equitable monetary award or transfer of an interest in the pension, retirement, profit sharing, or deferred compensation plan, or both.

monetary award to ensure consideration of the enumerated statutory factors, and for abuse of discretion. *See* FL § 8–205; *Doser v. Doser,* 106 Md.App. 329, 351, 664 A.2d 453 (1995); *Randolph v. Randolph,* 67 Md.App. 577, 584, 508 A.2d 996 (1986).

James correctly points out that there is no statute or case law explicitly permitting a **percentage** distribution of proceeds from the sale of a family home following a use and possession period. He characterizes the court's two-thirds award of the marital home sale proceeds to Cynthia "as a monetary award." James posits that allowing the court to award a proportion of the unknown net proceeds from a future sale of the marital home at the end of a use and possession period "totally frustrat[es] the purposes and considerations of the § 8–205(b) factors," prevents the creation of a debtor-creditor relationship, ignores the potential for changes in market and property conditions during the use and possession period, and effectively amounts to an impermissible award of "a contingent right to receive a marital property award[.]"

▆▆ Cynthia also interprets the court's two-thirds distribution of sale proceeds as a monetary award. Moreover, she acknowledges the settled Maryland law that "[g]ains on future sales of property are too speculative to consider" in determining a marital award. *See Innerbichler v. Innerbichler,* 132 Md.App. 207, 239, 752 A.2d 291, *cert. denied,* 361 Md. 232, 760 A.2d 1107 (2000). Thus, she agrees in principle that a trial court "cannot award a sum certain based upon the speculative value of the marital home at the end of the use and possession period." Cynthia contends, however, that the trial court acted appropriately in granting her a monetary award equal to two-thirds of the stipulated property value ($356,00 × .66 = $237,333), plus two-thirds of any increase or decrease that may occur during the use and possession period.[7] Because

---

7. To the extent that Cynthia's use and possession of the property results in waste, she points out that James "has the remedies that are available to any tenant in common." *See Manns v. Manns,* 308 Md. 347, 352, 519 A.2d 740 (1987).

the court correctly declined to "speculate as to a specific increase in value during the use and possession period[,]" it "did the only thing it could do which was to provide for a proportional increase or decrease to each party."

We agree with James that the trial court erred in distributing two-thirds of the sale proceeds on the Albacore Drive property to Cynthia. Our review has been complicated by uncertainty as to whether the trial court intended this order to be a monetary award. As we shall explain, however, no matter which way we characterize the order, we cannot affirm in its current form.

## B.

### Sale And Division Of Proceeds Under FL Sections 8–202(b) and 8–210(c)?

The most straightforward way to read the court's order would be to interpret the percentage award as the court's exercise of authority under FL section 8–202(b), to order sale of the Albacore Drive home, and distribute the proceeds following the use and possession period. This Court has recognized that "the trial court may, in its discretion, order the sale of the family home . . . after the use and possession period expires[.]" *Scott v. Scott*, 103 Md.App. 500, 524, 653 A.2d 1017 (1995). The General Assembly's direction in FL section 8–210(c) to "adjust the equities and rights of the parties concerning the property **as set out in § 8–205**" (emphasis added) does not mean that, once a use and possession order has been imposed, the court's lone tool for doing so is a monetary award. Nothing in either section 8–210(c) or section 8–205 obligates the court to grant a monetary award. To the contrary, subsection 8–205(a) states that "the court **may** . . . grant a monetary award," meaning that "[t]he decision whether to grant a monetary award is generally within the sound discretion of the trial court." *Alston v. Alston*, 331 Md. 496, 504, 629 A.2d 70 (1993).

The sale and division remedy authorized in section 8–202(b) has the potential advantage of making it unnecessary for the

court to project what the net sale proceeds are likely to be at the end of the use and possession period. Simply splitting the net proceeds, whatever they may be, is a most practical way to dispose of such property.

■ In this instance, however, the impediment to construing the court's award as a simple exercise of such authority under FL sections 8–202(b) and 8–210(c) is that the court did not split the sale proceeds equally. We found no Maryland case addressing this particular situation, but this Court has stated generally, in another context, that a "trial judge may either grant a monetary award to adjust the equities of the parties ... [under] § 8–205(a), **or,** in the case of property owned by both of them, order that the property be sold and the proceeds divided **equally**" under section 8–202(b)(2). *Pleasant v. Pleasant,* 97 Md.App. 711, 720, 632 A.2d 202 (1993)(emphasis added). Although there is no precedent specifically holding that the trial court does not have authority under FL section 8–202(b)(2) to distribute such proceeds **unequally,** we reach that conclusion by applying established principles governing disposition of marital property.

Under Maryland law, real property owned as tenants by the entireties is statutorily classified as marital property. *See* FL § 8–201(e)(2)(" 'Marital property' includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by agreement"). Although courts must consider the value of such jointly titled property in determining the amount of marital property, they cannot transfer title as a means of adjusting the equities upon divorce. *See* FL § 8–202(a)(3)("the court may not transfer the ownership of ... real property from 1 party to the other"). Allowing a court to order the sale of a family home, then distribute the proceeds unequally, would circumvent this statutory restriction on the court's authority. Consequently, Maryland courts cannot order one spouse to pay a monetary award to the other from the proceeds of the house.[8] *See* John

---

8. The 2006 General Assembly amended FL section 8–205(a)(2), effective October 1, 2006, to permit courts to

J. Fader, III & Richard Gilbert, *Md. Family Law* § 15–7(i), at 15–40 (3d ed.2000); John J. Fader, III, *Property Disposition in Md.*, at 17 (Judicial Institute of Maryland 2001).

In these circumstances, jurisdiction is limited to ordering that the property be sold; that the proceeds be divided equally; and that one spouse must pay as a monetary award a sum that the court finds to be equitable considering all of the factors enumerated in section 8–205(b), including the circumstances surrounding the family home. When, as here, the order to sell the family home following a use and possession period is expected to yield funds that might be used to pay a monetary award, the court simultaneously may order that the monetary award must be paid at the time the house is sold.

Applying this law to the Harts, we conclude that the trial court had no authority under section 8–202(b) to divide the net sale proceeds unequally. If the court wishes to adjust the equities between the parties, either with respect to the house specifically or the marital property generally, it must make a separate monetary award under FL section 8–205. Consequently, we cannot affirm this distribution as an appropriate exercise of discretionary authority under FL sections 8–202(b) and 8–210(c).

## C.

### Monetary Award Under FL Section 8–205?

The alternative construction of this unequal percentage distribution of net proceeds from the sale of the family home

---

transfer ownership of an interest in ... subject to the terms of any lien, real property jointly owned by the parties and used as the principal residence of the parties when they lived together, by:
1.  ordering the transfer of ownership of the real property or any interest of one of the parties in the real property to the other party if the party to whom the real property is transferred obtains the release of the other party from any lien against the real property;
2.  authorizing one party to purchase the interest of the other party in the real property, in accordance with the terms and conditions ordered by the court; or
3.  both.
2006 Md. Laws, ch. 431.

following the use and possession period is the one posited by both Harts—that it is a monetary award. FL section 8–210(c) authorizes the court to divide such proceeds following the use and possession period "in accordance with" the equitable policies and established procedures prescribed in FL section 8–205(b). Thus, the General Assembly intends that proceeds from the sale of a family home following a use and possession period will be put "into the pot" of marital property for purposes of determining whether a monetary award should be made, and if so, the appropriate amount of such an award and the terms on which it should be paid.

We nevertheless find it impossible to affirm this distribution of sale proceeds on this theory, due to the court's failure to mention the term monetary award, FL section 8–205, or any of the statutory factors that must be considered with respect to every monetary award.

Although consideration of the [section 8–205(b)] factors is mandatory, the trial court need not "go through a detailed check list of the statutory factors, specifically referring to each, however beneficial such a procedure might be...." This is because a judge is presumed to know the law, and is not required to "enunciate every factor he considered on the record," as long as he or she states that the statutory factors were considered. But, "the chancellor who fails to provide at least some of the steps in his thought process leaves himself open to the contention that he did not in fact consider the required factors."

*Malin v. Mininberg*, 153 Md.App. 358, 429–30, 837 A.2d 178 (2003) (citations omitted).

That is the fundamental problem with the instant order. Even assuming *arguendo* that it was intended to be a monetary award to Cynthia, we still would have to vacate that award because there is no indication that the court considered the mandatory factors listed in section 8–205(b) in deciding to make a monetary award to Cynthia. Although the court is not required to recite each factor in making a monetary award, appellate courts must be able to discern from the record that

these factors were weighed. *See id.; Randolph,* 67 Md.App. at 585, 508 A.2d 996. Here, there is simply no evidence of such consideration.

## Conclusion

We hold that the trial court erred in ordering an unequal percentage distribution of the family home sale proceeds.[9] Regardless of whether the court intended the order to be a sale in lieu of partition under FL section 8–202(b), or a monetary award under FL section 8–205, we must vacate the judgment, and remand for further proceedings, consistent with this opinion.[10]

## II.

### Indefinite Alimony

FL section 11–106, governing the award of alimony, provides in pertinent part:

(a)(1) The court shall determine the amount of and the period for an award of alimony.....

(b) In making the determination, the court shall consider all the factors necessary for a fair and equitable award [ [11] ]. . . .

---

**9.** Similarly, the court ordered unequal distribution of the proceeds from the sale of the Harts' jointly titled condominium in Ocean City, using the mirror proportion—one-third to Cynthia, two-thirds to James—without explanation.

**10.** Given this disposition, we do not address James's argument that this monetary award must be stated as a sum certain. Similarly, we need not resolve James's complaint that the trial court failed to give adequate weight to the "$565,000.00 in liquid assets which [Cynthia] owned as non-marital money" or to "the purchase of Albacore Drive" with James's non-marital money.

**11.** The enumerated, but non-exclusive, factors under FL section 11–106(b) are:

(1) the ability of the party seeking alimony to be wholly or partly self-supporting;

(2) the time necessary for the party seeking alimony to gain sufficient education or training to enable that party to find suitable employment;

(c) **The court may award alimony for an indefinite period, if the court finds that:....**

(2) **even after the party seeking alimony will have made as much progress toward becoming self-supporting as can reasonably be expected, the respective standards of living of the parties will be unconscionably disparate.** (Emphasis added.)

The trial court awarded Cynthia both rehabilitative (or "temporary") alimony and indefinite (or "permanent") alimony, as follows:

[Cynthia] is awarded temporary alimony in the amount of $2,300.00 each month, retroactive to November 5, 2003 and continuing until January 1, 2007. Then, provided [Cynthia] is earning at least Thirty Four Thousand Dollars ($34,000) annually, [Cynthia] is awarded indefinite alimony in the amount of One Thousand Five Hundred Dollars ($1,500.00) per month each month accounting from January 1, 2007.

James challenges this award on several grounds. Our decision to vacate the judgment as a result of the trial court's ambiguous award of proceeds from the sale of the family home necessarily requires the court to reconsider its alimony award. *See Malin,* 153 Md.App. at 425–26, 837 A.2d 178 (collecting

---

(3) the standard of living that the parties established during their marriage;

(4) the duration of the marriage;

(5) the contributions, monetary and nonmonetary, of each party to the well-being of the family;

(6) the circumstances that contributed to the estrangement of the parties;

(7) the age of each party;

(8) the physical and mental condition of each party;

(9) the ability of the party from whom alimony is sought to meet that party's needs while meeting the needs of the party seeking alimony;

(10) any agreement between the parties; [and]

(11) the financial needs and financial resources of each party, including:

(i) all income and assets, including property that does not produce income;

(ii) any award made under §§ 8–205 and 8–208 of this article; [and]

(iii) the nature and amount of the financial obligations of each party[.]

cases recognizing that, due to inter-related nature of monetary award, alimony, and other property disposition orders, decision to vacate one requires that others be vacated as well). In hope of avoiding a subsequent appeal, however, we shall exercise our discretion to review James's complaints. *See* Md. Rule 8–131(a).

"The determination of whether an unconscionable disparity exists, according to section 11–106(c) of the Family Law Article, is a finding of fact, reviewed under a clearly erroneous standard." *Solomon v. Solomon,* 383 Md. 176, 196, 857 A.2d 1109 (2004). We do not disturb an alimony award "unless the trial judge's discretion was arbitrarily used or the judgment below was clearly wrong." *Tracey v. Tracey,* 328 Md. 380, 385, 614 A.2d 590 (1992).

James argues that, as a matter of law, an award of indefinite alimony is not warranted here because "the entire evidence of the case proves that [Cynthia] could become self-supporting after two years," when she completed the education and training prerequisites for a certified teaching position. We reject James's contention that this two-year timeline necessarily precludes an award of indefinite alimony. James misconstrues the purpose of indefinite alimony, which he apparently believes to be help the financially dependent spouse become "self-supporting." Under FL section 11–106(c)(2), however, a court may award indefinite alimony even though the financially dependent spouse becomes self-supporting, if the court finds that "the respective standards of living of the parties will be unconscionably disparate." Thus, even assuming *arguendo* that Cynthia would be self-supporting within two years, that would not preclude an award of indefinite alimony.

We find more merit in James's second challenge to the alimony award. He contends that the trial court erroneously failed to find that an unconscionable disparity would continue to exist even after a period of rehabilitative alimony. Cynthia counters by pointing to evidence that her projected "post-rehabilitation" salary will be $35,000 (with no seniority or

pension benefits until vesting occurs), while James's annual income at trial was $112,300 in salary plus a $15,000 bonus (with 29 years seniority and established pension benefits). She emphasizes that James's current annual income is already more than 3.5 times Cynthia's projected future income—leaving her post-rehabilitative alimony income at approximately 27% of his. Moreover, Cynthia asserts, she lost opportunities to grow her inheritance money during the marriage, because she used it to pay family expenses and maintain their standard of living.

We agree with James that the trial court erred in failing to make the requisite finding of unconscionable disparity. Although the evidence cited by Cynthia may well support such a finding, the court did not make any findings as to what the parties' respective standards of living would be after Cynthia obtains a certified teaching position, much less decide whether Cynthia's will be unconscionably lower than James's.

Just as it is error to deny a request for indefinite alimony "without explicitly discussing the disparity issue," *see Kelly v. Kelly,* 153 Md.App. 260, 279, 836 A.2d 695 (2003), so too is it error to **grant** such a request without explicitly discussing the disparity issue. *See Brewer v. Brewer,* 156 Md.App. 77, 104–05, 846 A.2d 1, *cert. denied,* 381 Md. 677, 851 A.2d 596 (2004). On remand, the trial court must consider the disparity in Cynthia's and James's incomes after Cynthia obtains a certified teaching position.[12] *See Solomon,* 383 Md. at 198, 857 A.2d 1109.

**JUDGMENT VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ½ BY APPELLANT, ½ BY APPELLEE.**

---

**12.** James argues that the court's order is ambiguous because it appears to condition the indefinite alimony award upon Cynthia earning $34,000. We trust that any future award of alimony can be reworded to avoid any dispute as to its meaning.