947 A.2d 59

**Raul De ARRIZ et al.**

v.

**Laura KLINGLER–De ARRIZ.**

**No. 480, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

May 1, 2008.

**460**

E. Joseph Fitzpatrick, Caros M. Lastra (Anne E. Grover, Bryan Renehan, Brodsky, Greenblatt, Renehan & Pearlstein, on brief), Gaithersburg, for appellant.

Susan J. Rubin (Hoffman & Rubin, LLC, on brief), Rockville, for appellee.

Panel DAVIS, JAMES R. EYLER and LAWRENCE F. RODOWSKY, (retired, specially assigned), JJ.

## DAVIS, J.

The action of the circuit court in the instant appeal presents a classic case of the proverbial, "No good deed goes unpunished." The court attempted to remediate retrospectively its earlier effort to absolve appellant of what it viewed as oppressive interest payments which would accrue on the monetary award granted appellee. We are tasked to determine whether it properly applied Maryland Rules 9–210 and 2–648 to prevent appellant's law firm from establishing priority in the proceeds from the sale of the marital home over the marital award granted to appellee.

Appellants, Raul deArriz and the law firm of Brodsky, Greenblatt, Renehan & Pearlstein, Chartered,[1] appeal from an Order of the Circuit Court for Montgomery County entered on June 29, 2007, in favor of appellee, Laura Klinger-deArriz. The Order grants appellee's Emergency Motion To Reconsider, To Revise and to Alter and/or Amend the Court's Order Entered on April 28, 2006 (Emergency Motion) and orders the clerk of the court to enter a money judgment against the

---

1. When referring to appellants individually, we shall refer to Raul deArriz as "appellant" and Brodsky, Greenblatt, Renehan & Pearlstein, Chartered as "the Brodsky firm."

Brodsky firm in favor of appellee in the amount of $110,000. Appellants filed this timely appeal, presenting the following issues for our review,[2] which we have rephrased and consolidated as follows:

I. Whether the trial court erroneously granted appellee's Emergency Motion.

II. Whether the trial court erroneously entered a money judgment against the Brodsky firm in favor of appellee in the amount of $110,000.

For the reasons that follow, we resolve the issues in favor of appellants and, accordingly, reverse the judgment of the Circuit Court for Montgomery County.

## FACTUAL AND PROCEDURAL BACKGROUND

Since appellee's Complaint for Absolute Divorce was filed on October 21, 2004, appellant and appellee have been engaged in contentious and protracted litigation regarding their divorce and ancillary matters. After a seven-day divorce trial on the merits, the trial judge made extensive findings of fact and rulings of law, which are included in her thirty—nine page Memorandum Opinion that accompanies her Judgment of Absolute Divorce, both entered on April 28, 2006.[3]

---

**2.** The issues, as framed by appellants, are:
 I. Whether the trial court erred by granting appellee's [Emergency Motion] absent a finding of fraud, mistake or irregularity.
 II. Whether the trial court erred by finding appellant a non-complying obligor under Md. Rule 9–210 and [the Brodsky firm] a transferee with knowledge under Md. Rule 2–648 and entering an order against a non-party.
 III. Whether the trial court erred by, in effect, directing that appellant's sales proceeds were to be used to pay the monetary award to appellee.

**3.** Appellant and appellee entered into a settlement agreement on December 14, 2005, which the trial court incorporated, but did not merge into the Judgment of Absolute Divorce. Pursuant to the terms of the settlement agreement, the parties agreed to sell the marital home.
 Appellant and appellee both appealed the Judgment of Absolute Divorce to this Court. In *deArriz v. Klinger-deArriz*, No. 536, September Term, 2006, (filed April 11, 2007), we affirmed the trial court's findings.

At issue in this appeal is the circuit court's Order in its Judgment of Absolute Divorce that commanded that "[appellee] shall be and is hereby granted a monetary award against [appellant] in the amount of $110,000 ... and said award shall be payable upon settlement of the sale of the [marital home located at 5905 Griffith Road, Laytonsville, Maryland]." Significantly, the trial judge did not reduce the monetary award to a judgment, explaining on the record that, if the court had entered a judgment, but stayed the judgment's execution until the date of settlement, substantial interest would have accrued and, thus, as a benefit to appellant, the judge did not enter a money judgment.

On October 20, 2006, appellant and appellee entered into a contract to sell their marital home for $1,075,000. Settlement was scheduled for January 16, 2007. Prior to settlement, on January 11, 2007, appellant and appellee received a draft settlement sheet, whereupon appellee learned, for the first time, that the Brodsky firm had filed a deed of trust in the amount of $145,534.28, excluding interest, against appellant's interest in the marital home on October 5, 2006. With the purchase money mortgage, as the first mortgage encumbering the property, the Brodsky firm's deed of trust comprised one-half of appellant's net proceeds from the expected sale.

On January 12, 2007, four days before settlement, the Brodsky firm filed another deed of trust; this time in the amount of $101,862.30, excluding interest. On that same day, upon the filing of a petition for contempt by the Montgomery County Office of Child Support Enforcement, appellant consented to a judgment in the amount of $22,993.98 for child support arrearages. Thus, at the time of settlement, four liens encumbered appellant's title to the marital home, effectively eliminating appellant's interest in the marital home.

Appellant conveyed to the Brodsky firm the two deeds of trust as payment for a portion of his attorney's fees owed in relation to his legal representation in the domestic relations

case.[4] Because appellant would receive no proceeds from the sale of the marital home, appellee objected to the Brodsky firm's liens taking priority over the monetary award. Due to the controversy regarding the deeds of trust, settlement did not proceed as scheduled.

On January 24, 2007, appellant filed an Emergency Motion to Appoint A Trustee to Sell the Former Marital Home and to Enforce the Parties Agreement. In it, he requested that a trustee be appointed to consummate the sale of the marital home, that the appointed trustee be compensated for its service from appellee's net proceeds of the sale and that the Brodsky firm be paid all o f the ne t proceeds due and owing to appellant.

On January 30, 2007, appellee filed an opposition to appellant's motion and, additionally, submitted to the trial court an Emergency Motion, requesting that the court revise the Judgment of Absolute Divorce *nunc pro tunc*, thereby giving appellee's monetary award priority over the Brodsky firm's two liens.

A day before the rescheduled settlement date, on February 8, 2007, the trial court heard oral arguments on the motions. During the hearing, as a temporary solution, the Brodsky firm agreed to the withdrawal of their liens in the amount of $110,000 with the understanding that the firm would maintain its filing date for purposes of determining priority at a later court hearing.[5] The trial court made no ruling and took the matter under advisement.

On February 9, 2007, settlement occurred as planned and the settlement company deposited $110,000 into the court registry pursuant to a consent order.[6] On February 20, 2007,

---

4. Appellant was represented by independent counsel when he agreed to allow the Brodsky firm to place the liens against his interest in the marital home.

5. Accordingly, appellant dismissed his request that the court appoint a trustee to consummate the sale of the marital home.

6. Despite the $110,000 deposited into the registry, the Brodsky firm received a substantial portion of their first lien.

appellant filed an opposition to appellee's Emergency Motion; appellee thereafter filed a reply to that opposition.

A second hearing took place on March 16, 2007, during which the parties disputed whether the Brodsky firm had a right to the escrowed funds. During the hearing, the trial court engaged in a colloquy with counsel for appellant, examining the ethical ramifications of the Brodsky firm's deeds of trust in relation to Rules 1.7 and 1.8 of the Maryland Lawyers' Rules of Professional Conduct. At the conclusion of the hearing, the trial court took the matter under advisement and scheduled another hearing for May 10, 2007.

Prior to the May 10 hearing, the trial judge informed counsel to address the applicability of Maryland Rules 9–210(b) and 2–648. The day before the hearing, the Brodsky firm filed a memorandum specifically addressing the court's inquiry. Because the trial court was contemplating the entry of a judgment against the Brodsky firm, the firm retained independent counsel and was represented by that counsel at the hearing. All parties addressed the issues raised by the trial judge and attempted to answer the judge's query of whether the court may enter a money judgment against the Brodsky firm in favor of appellee in the amount of the marital award. The trial court took the matter under advisement and allowed appellee the opportunity to respond in writing to appellant's written submissions. Counsel for the Brodsky firm was also permitted to file a response.

On June 29, 2007, the trial court granted appellee's Emergency Motion and ordered the clerk of the court to enter a money judgment against the Brodsky firm in favor of appellee in the amount of $110,000 pursuant to Rule 2–648. In support of the Order, the trial court issued a Memorandum Opinion and Notice of Judgment.

Additional facts will be provided, hereafter, as warranted.

## ANALYSIS

### I

Appellants initially argue that, upon an examination of the record, the facts do not support a finding of fraud, mistake or irregularity and, thus, the trial court erroneously granted appellee's Emergency Motion. While appellants acknowledge that the trial court's ruling on a motion pursuant to Maryland Rule 2–535(b)[7] is reviewed for an abuse of discretion, they submit that the trial court is not yielded "unfettered discretion" in revising an enrolled judgment and that "a court's revisory powers do not provide for the amendment of an enrolled judgment on the ground of 'fundamental unfairness.'" *Wells v. Wells,* 168 Md.App. 382, 394, 896 A.2d 1082 (2006); *Thacker v. Hale,* 146 Md.App. 203, 231, 806 A.2d 751 (2002). Appellee, however, contends that, under Rules 9–210(b) and 2–648, the trial court properly entered a money judgment against the Brodsky firm and, thus, did not abuse its discretion in granting the Emergency Motion. Notwithstanding this fact, appellee concedes that the trial court would not have erred if it had indeed resolved the controversy pursuant to Rule 2–535(b).

On February 8, 2007, appellee filed an Emergency Motion, requesting that the trial court revise the Judgment of Absolute Divorce, pursuant to Maryland Rule 2–535(b),[8] *nunc pro tunc.* Appellee argued that the Judgment of Absolute Divorce and accompanying Memorandum Opinion clearly indicate that the trial court entered a money judgment for the monetary award as of the date of the divorce decree and merely stayed its payment until appellant and appellee sold the marital home. Alternatively, appellee contended that, even if the trial

---

**7.** Rule 2–535(b) provides that "[o]n motion of any party filed at any time, the court may exercise revisory power and control over the judgment in case of fraud, mistake, or irregularity."

**8.** Although appellee's Emergency Motion requested relief pursuant to subsection (d) of Rule 2–535, appellee subsequently acknowledged that she was advancing her argument under subsection (b).

court did not reduce the monetary award to a judgment, the express language of the Memorandum Opinion demonstrates that the court intended to do so and, therefore, the court can fix the irregularity.

Appellant responded that the trial court lacked the authority to revise its Judgment of Absolute Divorce under Rule 2–535(b) and (d) because the "error" was not an irregularity or clerical mistake within the judicially accepted meaning of the terms. Consequently, appellant argued that the court was without authority to revise the Judgment of Absolute Divorce *nunc pro tunc.*

At the May 10 hearing, counsel for appellant and appellee presented their arguments under Rule 2–535. Additionally, the parties, including the Brodsky firm, responded to the trial judge's query regarding the applicability of Rules 9–210(b) and 2–648. The court took the matter under advisement and, on June 29, 2007, granted appellee's Emergency Motion.

The Order [9] specifically incorporates the Memorandum Opinion, wherein the trial court, after summarizing the arguments of appellant and appellee regarding Rule 2–535(b), opined that "[b]oth [appellee] and [appellant] present cogent arguments in support of their respective positions on this issue. The [c]ourt finds it unnecessary to resolve this dispute given the resolution of the controversy on other grounds." The trial court thereafter proceeded to discuss in detail Rules 9–210(b) and 2–648, ultimately concluding that "[f]or the foregoing reasons, and in accordance with Md. Rule 2–648(b), this

---

9. The Order provides:

Upon consideration of [appellee's Emergency Motion], any opposition thereto, hearings having been held on February 8, March 6, and May 10, 2007, it is this **29th day of June, 2007,** by the Circuit Court for Montgomery County, Maryland,

**ORDERED,** that [appellee's Emergency Motion] be and hereby is **GRANTED** for the reasons set forth in the accompanying Memorandum Opinion; and it is further

**ORDERED,** that the Clerk of the Court shall enter a money judgment against the [Brodsky firm] in favor of [appellee], in the amount of One Hundred and Ten Thousand Dollars ($110,000) pursuant to Maryland Rule 2–648. . . .

[c]ourt enters a money judgment against the Brodsky [f]irm in favor of [appellee] in the amount of One Hundred and Ten Thousand Dollars ($110,000)."

When reading the Order and Memorandum Opinion as a whole and interpreted in light of the facts on which they are based, it is clear that the trial court granted appellee's requested relief, but did not grant appellee's Emergency Motion based upon Rule 2–535(b). The instant matter came before the trial court *via* appellee's Emergency Motion. Throughout the three hearings and responsive pleadings filed, appellee consistently maintained that she was entitled to the $110,000 held in the court registry. Thus, by granting appellee's Emergency Motion, the court was granting appellee's entitlement to those funds.

The trial court did not expand its power to revise an enrolled judgment because the court did not technically revise or amend the Judgment of Absolute Divorce. *Platt v. Platt*, 302 Md. 9, 485 A.2d 250 (1984). The terminology employed by the trial court was intended to show that the Order was entered in favor of appellee. It was pursuant to Rule 2–648 that the trial court enforced the Judgment of Absolute Divorce by entering a money judgment against the Brodsky firm.

Accordingly, to review the trial court's ruling we must determine whether appellant is a non-complying obligor pursuant to Rule 9–210(b) and whether, under Rule 2–648(b), the Brodsky firm is a transferee with knowledge, which we shall discuss *infra*. Prior to doing so, however, we examine the arguments of appellant and appellee regarding Rule 2–535(b).

Appellants assert that appellee failed to establish the evidence necessary for the trial court to find fraud, mistake or irregularity by clear and convincing evidence. *Thacker*, 146 Md.App. at 217, 806 A.2d 751. By contrast, appellee contends that there was a "combination of irregularity and/or fraudulent behavior" sufficient for the trial court to resolve the controversy pursuant to Rule 2–535(b).

An irregularity, which will permit a court to exercise revisory powers over an enrolled judgment, is defined as "the

doing or not doing of that, in the conduct of a suit at law, which, comformable to the practice of the court, ought or ought not to be done." *Weitz v. MacKenzie,* 273 Md. 628, 631, 331 A.2d 291 (1975). Consequently, an irregularity, in the contemplation of Rule 2–535(b), usually means "irregularity of process or procedure," not an error, "which in legal parlance, generally connotes a departure from truth or accuracy of which a defendant had notice and could have challenged." *Id.*(internal citations omitted). Courts, therefore, have held "that if the judgment under attack was entered in conformity with the practice and procedures commonly used by the court that entered it, there is no irregularity justifying the exercise of revisory powers under Rule 2–535(b)." *Thacker,* 146 Md. App. at 221, 806 A.2d 751 (citing *Home Indem. Co. v. Killian,* 94 Md.App. 205, 217, 616 A.2d 906 (1992)).

██ Section 8–205(c) of the Family Law Article of the Maryland Annotated Code provides that a trial court "may reduce to a judgment any monetary award made under [§ 8–205], to the extent that any part of the award is due and owing." The trial court intentionally decided not to enter a money judgment in the amount of the monetary award as a benefit to appellant. Thus, the failure to reduce the monetary award to a judgment was not an irregularity or a clerical mistake. Because the Judgment of Absolute Divorce was entered in conformity with the practice and procedures commonly used by the trial court, appellee is unable to establish an irregularity by clear and convincing evidence, justifying the exercise of revisory powers under Rule 2–535(b). *Thacker,* 146 Md.App. at 217, 806 A.2d 751; *see, e.g., Alban Tractor Co. v. Williford,* 61 Md.App. 71, 484 A.2d 1039 (1984), *cert. denied,* 302 Md. 680, 490 A.2d 718 (1985) (holding that a clerk's failure to send a copy of the final order to the defendant may be an "irregularity"); *Mutual Benefit Soc'y of Baltimore, Inc. v. Haywood,* 257 Md. 538, 263 A.2d 868 (1970) (holding that dismissal without notice is an "irregularity" as defined in Rule 2–535(b)).

 With respect to fraud as a basis for the court's revisory power, we draw the distinction between "extrinsic" and "intrinsic" fraud. A litigant seeking to set aside an enrolled decree must prove extrinsic and not intrinsic fraud. In *Manigan v. Burson*, 160 Md.App. 114, 120–21, 862 A.2d 1037 (2004), we explained the principle underlying the rule that an enrolled decree will not be vacated, even though obtained by the use of forged documents, perjured testimony, or any other frauds which are "intrinsic" to the case itself:

> [O]nce parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered and the litigants, if they so choose, have exhausted every means of reviewing it, the public policy of this State demands that there be an end to that litigation.... This policy favoring finality and conclusiveness can be outweighed only by a showing "that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy."

*Id.* (citing *Billingsley v. Lawson*, 43 Md.App. 713, 719, 406 A.2d 946 (1979)). Appellants have neither imposed upon the jurisdiction of the circuit court nor have they prevented an adversarial trial and, thus, appellee has failed to demonstrate intrinsic fraud.

## II

### Maryland Rules 9–210(b) and 2–648

Appellants next argue that, notwithstanding the procedural anomaly in granting appellee's Emergency Motion under Rules 9–210 and 2–648, the record does not support the trial court's finding that appellee is entitled to relief. Asserting that appellant is *not* a non-complying obligor and that the Brodsky firm is *not* a transferee with knowledge, appellants contend that the trial court erroneously entered a money judgment against the Brodsky firm in favor of appellee in the amount of $110,000. Specifically, appellants argue that the Judgment of Absolute Divorce's "nebulous dictate regarding

the timing of payment of the monetary award was not directed toward any specific or particular property" and, thus, they cannot be subject to the strictures of Rules 9–210 and 2–648. Appellee responds that "it is truly audacious" for appellants to argue that the trial court erroneously entered a money judgment against the Brodsky firm and, in support of her contention, incorporates the trial court's Memorandum Opinion verbatim.

Rule 9–210(b) provides, in pertinent part, "When the court has ordered ... a monetary award, the property of a noncomplying obligor may be seized or sequestered in accordance with the procedures of Rules 2–648...." *Id.* Appellant failed to pay the monetary award upon settlement of the sale of the marital home and, therefore, appellant is unquestionably a non—complying obligor. Accordingly, we turn to Rule 2–648 for guidance in determining how a court may order the seizure or sequestration of appellant's property to the extent necessary to compel compliance with the Judgment of Absolute Divorce. Rule 2–648 provides:

(a) Generally. When a person fails to comply with a judgment prohibiting or mandating action, the court may order the seizure or sequestration of property of the noncomplying person to the extent necessary to compel compliance with the judgment and, in appropriate circumstances, may hold the person in contempt pursuant to Rules 15–206 and 15–207. When a person fails to comply with a judgment mandating action, the court may direct that the act be performed by some other person appointed by the court at the expense of the person failing to comply. When a person fails to comply with a judgment mandating the payment of money, the court may also enter a money judgment to the extent of any amount due.

(b) Against Transferee of Property. If property is transferred in violation of a judgment prohibiting or mandating action with respect to that property, and the property is in the hands of a transferee, the court may issue a subpoena for the transferee. If the court finds that the transferee had actual notice of the judgment at the time of the

transfer, the transferee shall be subject to the sanctions provided for in section (a) of this Rule. If the court finds that the transferee did not have actual notice, the court may enter an order upon such terms and conditions as justice may require.

Appellant and the Brodsky firm entered into an agreement whereby the Brodsky firm was authorized to impose two liens, totaling $247,396.58, on appellant's interest in the marital home as remuneration for services rendered. *See Pence v. Norwest Bank Minnesota, N.A.,* 363 Md. 267, 277, 768 A.2d 639 (2001) ("The modern conception of a lien is that it is a right given by contract, statute or rule of law to have a debt or charge satisfied out of a particular property."). The trial court found that, in reaching the agreement, appellant was represented by independent counsel and that there w as no evidence of fraud.

At the time each deed of trust was filed, perfection occurred and the Brodsky firm established a priority right in the encumbered property with respect to third party creditors. *See Messinger v. Eckenrode,* 162 Md. 63, 158 A. 357 (1932) (holding that liens are effective from the date of entry and among "several judgments against the same debtor they take effect according to their date and are entitled to be satisfied in order of their seniority. . . ."). The Judgment of Absolute Divorce, entered on April 28, 2006, did not reduce the monetary award to a judgment and, thus, with no other superseding liens on the property, the Brodsky firm's deeds of trust establish the firm's priority to the $110,000 held in the registry. *See* Md.Code Ann., Cts. & Jud. Proc. § 11–401(2) (2006) ("'Money judgment' does not include a judgment mandating the payment of money."); § 11–402(b) ("If indexed and recorded as prescribed by the Maryland Rules, a money judgment of a court constitutes a lien to the amount and from the date of the judgment. . . .").

Given that the Brodsky firm held title to the funds in the court registry, the trial court utilized Rule 2–648(b) as a vehicle for entering a money judgment against the firm. To

fall within the ambit of Rule 2–648(b), property must be "transferred in violation of a *judgment* prohibiting or mandating action." *Id.*(emphasis added). Contrary to appellants' contentions, the Rule does not specifically provide that property must be transferred in violation of a "money judgment." A "judgment" is defined as "any order of court final in its nature entered pursuant to these rules." Md. Rule 1–202(n). The Judgment of Absolute Divorce is a judgment that mandates appellant to pay a monetary award at the time of settlement of the sale of the marital home and, thus, constitutes a "judgment" for the purposes of Rule 2–648.

█ If property is transferred in violation of a judgment and is in the hands of the transferee, "the court may issue a subpoena for the transferee." Md. Rule 2–648(b). The Brodsky firm was never issued a subpoena by the trial court and, hence, it argues that it was not afforded procedural due process. A subpoena "means a written order or writ directed to a person and requiring attendance at a particular time and place to take the action specified therein." Md. Rule 1–202(y). Every subpoena shall contain the caption of the action, the name and address of the person to whom it is directed, name of the person at whose request it is issued, the date, time and place where attendance is required and a description of any documents or other tangible things to be produced. M d. Rule 2–510(c).

The court informed counsel to prepare arguments regarding the applicability of Rules 9–210 and 2–648 for the May 10 hearing. Thus, as the Brodsky firm admits, it knew that the trial court was contemplating an entry of judgment against the Brodsky firm. In anticipation thereof, the Brodsky firm retained independent counsel. Considering all the mandates required by Rule 2–510(c), we conclude that the trial court's failure to issue a subpoena to the Brodsky firm is of no consequence. Furthermore, the Brodsky firm had available every opportunity to present its arguments before the trial judge and to submit any brief or memorandum with the court.

Next, in accordance with Rule 2–648(b), "If the court finds that the transferee had actual notice of the judgment at the time of the transfer, the transferee shall be subject to the sanctions provided for in subsection (a) of [the] Rule," including contempt, seizure or sequestration of property and the entry of a money judgment. Finding that the Brodsky firm possessed actual notice of the mandate requiring appellant to pay appellee a monetary award at the time of settlement, the court reasoned:

If the Brodsky [f]irm was a third party creditor with no notice of the Judgment of Absolute Divorce mandating the payment of a monetary award at the time of settlement, then the [c]ourt would look solely to [appellant] to remedy the unpaid monetary award. Md. Rule 2–648(a). However, the Brodsky [f]irm as counsel for [appellant] throughout the underlying divorce proceedings, knew of and fully comprehended the obligations owed by [appellant] as a result of the Judgment of Absolute Divorce. Md. Rule 2–648(b).

The Brodsky firm argued forcefully at the various hearings held on [appellee's] Emergency Motion that [its] deeds of trust had priority over the monetary award because [the] [c]ourt chose not to reduce the monetary award to a separate money judgment due and owing as of the date of the divorce. The Brodsky firm knew of [appellant's] obligation to pay the monetary award; nevertheless, the firm obtained two liens on the proceeds from the property knowing that the marital award was due and owing at that precise moment in time. The Brodsky firm had actual knowledge of the Judgment of Absolute Divorce's mandatory payment of the monetary award when they obtained [appellant's] remaining interest in the marital home. Despite this knowledge, the Brodsky firm obtained $247,396.58 from [appellant] to cover [its] attorney's fees leaving [appellant] in the position of paying the $110,000 monetary award with "other assets," or not at all.

[The] [c]ourt cannot allow [appellant] to blatantly disregard the requirements of the Judgment of Absolute Divorce by divesting himself of sufficient funds to satisfy his obli-

gations to pay the monetary award. Nor can it allow the Brodsky firm to accept the funds at issue knowing full well that [appellant] was obligated to pay the monetary award at the time of settlement. The Brodsky firm exposed itself to the sanctions provided for in Rule 2–648(a) by their knowing acceptance of [appellant's] entire remaining portion of the proceeds from the sale of the marital home at a time when [appellant] was mandated to comply with [the] [c]ourt's Judgment of Absolute Divorce and concomitant orders. Md. Rule 2–648(b).

(Footnotes omitted).

■ In consideration of Rule 2–648(b) and the trial court's Memorandum Opinion, at first blush, it would appear that the trial court properly entered a money judgment against the Brodsky firm; however, the trial court's decision did not take into account that the Judgment of Absolute Divorce did not mandate an action with respect to appellant's interest in the marital home. The Judgment of Absolute Divorce provides that "[appellee] shall be and is hereby granted a monetary award against [appellant] in the amount of $110,000 . . . said award shall be payable upon settlement of the sale of the family home." *See Hart v. Hart,* 169 Md.App. 151, 165, 899 A.2d 965 (2006) (holding that where the sale of the marital home is "expected to yield funds that might be used to pay a monetary award, the court simultaneously may order that the monetary award must be paid at the time the house is sold").

Thus, appellant was not ordered to pay the monetary award from the proceeds of the sale of the marital home and, furthermore, under *Hart v. Hart, supra,* could not have been so ordered. In *Hart,* we held:

Under Maryland law, real property owned as tenants by the entireties is statutorily classified as marital property. *See* [Md.Code Ann., Fam. Law] § 8–201(e)(2) (" 'Marital property' includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by agreement"). Although courts must consider the value of such jointly titled property in determining the

amount of marital property, they cannot transfer title as a means of adjusting the equities upon divorce. *See* F.L. § 8-202(a)(3) ("the court may not transfer the ownership of ... real property from 1 party to the other").[10] Allowing a court to order the sale of a family home, then distribute the proceeds unequally, would circumvent this statutory restriction on the court's authority. Consequently, Maryland courts cannot order one spouse to pay a monetary award to the other from the proceeds of the house.

*Id.* at 164–65, 899 A.2d 965.

Although the trial judge acknowledged that she lacked the authority to direct payment of a monetary award from the proceeds of the sale of a marital home, she nevertheless reasoned that appellant's payment of the monetary award was "inextricably linked to the settlement of the sale of the marital home." Circumventing the issue of whether the creation of the lien held by the Brodsky firm against appellant's interest in the martial property was in violation of the Judgment of Absolute Divorce with *respect to that property,* the trial court's rationale is based upon contradictions. On one hand, the trial judge declared:

> This ruling in no way implies that the [c]ourt believes [appellant] had to use these specific funds to pay the monetary award. [Appellant] was free to pay the monetary award any way he saw fit. Given that he failed to pay the monetary award, as required, the [c]ourt now looks to the totality of the situation and concludes that [appellant] divested himself of sufficient assets to satisfy the monetary award in direct contravention of his obligation under the Judgment of Absolute Divorce. [Appellant] essentially contends that he had two debts facing him as settlement approached and that he was perfectly free to choose to pay

---

**10.** In 2006, the General Assembly amended § 8-205(a)(2)to permit "transfer ownership of an interest in: ... (iii) subject to the terms of any lien, real property jointly owed by the parties and used as the principal residence of the parties when they lived together...." The amendment became effective October 1, 2006, after the case *sub judice* was filed and decided by the trial court.

his attorney with the assets available to him instead of the monetary award. The [trial court] is in no position to deprive this [appellant] or anyone else of making a similar choice. However, the [c]ourt can and will utilize every remedial measure under the Maryland Rules to ensure that its mandates are not taken as empty gestures, and ignored without fear of future consequence.

While opining that appellant "was free to pay the monetary award any way he saw fit," the trial judge repeatedly implies that appellant was duty bound to pay the monetary award to appellee from the proceeds of the sale of the marital home: "The Judgment of Absolute Divorce *contemplated that* [appellant] would be able to pay the monetary award with his portions of the proceeds." "[P]ayment of the monetary award was *inextricably linked* to the settlement of the sale of the marital home" and "The Brodsky firm's deeds of trust have had the net effect of taking [appellant's] proceeds from the sale of the marital home (excluding the mortgage and child support liens), thereby *preventing [appellant] from satisfying the monetary award from that source of funds.*" (Emphasis added). Furthermore, by entering a money judgment against the Brodsky firm, pursuant to Rule 2–648(b), the trial court effectively ordered that appellant was obligated to pay the monetary award from the funds yielded from the sale of the marital home.

Thus, in contravention of statutory and case law, the trial court mandated an unenforceable dictate regarding appellant's use of the proceeds from the sale of the marital home. *See* Md.Code Ann., Fam. Law § 8–205(a)(2) (Repl.Vol.2004); *Hart,* 169 Md.App. 151, 899 A.2d 965; *see also Frederick County Nat. Bank v. Shafer,* 87 Md. 54, 39 A. 320 (1898) (holding that an "owner is entitled to his property, and to the use of it, whether it be real estate, chattels, choses in action, or money; and no court has the right to lay hold of it, or interfere with his lawful use of it, simply to await the result of a suit at law."); *Balls v. Balls,* 69 Md. 388, 16 A. 18 (1888) ("Except where changed by statute, it is an invariable rule that the holder of a debt cognizable at law cannot obtain relief in

equity until he has shown that his legal remedies are inadequate. If he seeks to subject real estate to the payment of his debt, he must obtain a judgment creating a lien upon it.").

Accordingly, the trial court erred in entering a money judgment against the Brodsky firm pursuant to Rule 2-648(b).

## Equitable Lien

Notwithstanding that the trial court was without the authority to direct appellant to pay the monetary award from the proceeds of the sale of the marital home, it found that "[appellee] arguably maintains an equitable lien on the funds at issue as a result of the Judgment of Absolute Divorce." According to the trial judge, appellee "fairly and reasonably" could assume from the payment structure that appellant's obligation to pay the monetary award on the date of settlement was secured by appellant's expected proceeds from the sale of the marital home. Proceeding from this premise, the trial court found that "[appellee] could move to enforce her interest in the proceeds against the Brodsky firm—a voluntary assignee with prior notice—since [appellant] failed to pay the monetary award as required."

Buttressing the proposition that appellee maintained an equitable lien on the funds at issue, the trial court cites *Pence v. Norwest Bank Minnesota, N.A., supra,* as a general explication for when and how equitable liens are created. In *Pence,* a homeowner sued Maryland Financial First Security, Access, Michael Fine, Norwest and LSI Financial, claiming that they had all violated the Maryland Secondary Mortgage Loan Law. The homeowner alleged that the City Loan was a lien on her property, bringing the defendants within the purview of the Maryland Secondary Mortgage Loan Law and that, by increasing her finance charge, her annual percentage rate and her monthly payments on the loan, the defendants had violated the law. *Id.* at 272, 768 A.2d 639. The Court of Appeals explained that "[t]he modern conception of a lien is that it is a right given by contract, statute or rule of law to have a debt or charge satisfied *out of a particular property." Id.* at 287, 768 A.2d 639 (citing *Chevy Chase Bank v. Chaires,*

350 Md. 716, 731, 715 A.2d 199 (1998)) (emphasis supplied). Further expounding upon the doctrine of an equitable lien, the Court opined:

> The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice.

*Id.* at 287–88, 768 A.2d 639 (citing 4 J. Pomeroy, *Equity Jurisprudence* § 1235 (5th ed., S. Symons 1941)). As discussed *supra,* the Judgment of Absolute Divorce did not mandate that appellant pay the monetary award from the proceeds yielded from the sale of the marital home and, thus, an equitable lien was not created.

### Constructive Trust

█ Positing her argument that the trial court properly entered a money judgment against the Brodsky firm, appellee sets forth an additional argument, not relied upon by the trial judge, regarding constructive trusts. According to appellee, the Brodsky firm held funds totaling $110,000 in a constructive trust for her benefit. We disagree.

Speaking for this Court, former Chief Judge Gilbert opined in *Hartsock v. Strong,* 21 Md.App. 110, 116, 318 A.2d 237 (1974) that

> [c]onstructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. They arise purely by construction of equity, indepen-

dently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustees for the purpose of working out the remedy. The trusts are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud, and not trust. Equity declares the trust in order that it may lay its hand on the thing and wrest it from the possession of the wrongdoer. Constructive trusts may be divided into three classes: first, trusts that arise from actual fraud; second, trusts that arise from constructive fraud; third, trusts that arise from some equitable principle independent of the existence of any fraud.

 During the May 10 hearing, the trial court acknowledged: "I am not envisioning any allegation or assertion on my part or decision on my part that would involve fraud." The trial judge accepted the assertions of the Brodsky firm that appellant received advice from independent counsel and made an informed decision regarding the two deeds of trust. Although it has been stated that fraud is an essential element in the creation or existence of a constructive trust, fraud is not required. *Id.* at 116–18, 318 A.2d 237. In most cases, however, unless there is an acquisition of property in which another individual has an equitable claim, no constructive trust may be imposed. *Id.* at 118, 318 A.2d 237 ("It is enough that the conscience of a court of equity would b e traumatized if the legal title holder were allowed to deprive the beneficial owner of that which in good conscience belongs to the beneficial owner."). Appellee had no claim to appellant's interest in the marital home and, thus, the proceeds from the sale of the marital home did not belong to appellee.

### Epilogue

In her Memorandum Opinion accompanying the Judgment of Absolute Divorce, the trial judge wrote:

Considering all of the factors discussed above, including [appellant's] use of marital funds for *pendente lite* fee obligations and his refusal to allow [appellee] to do the same, the [c]ourt will enter a judgment for [appellee]

against [appellant] in the amount of $110,000 as a monetary award. This amount will be due upon settlement of the sale of the [marital home].

\* \* \*

[Appellee's] total fees, not including the costs of the last day of trial briefing, are $195,223. She borrowed money from her father to pay the majority of these fees. [Appellant] has paid $10,000 of [appellee's] attorney['s] fees pursuant to the [c]ourt's *pendente lite* award. Given the financial profiles of the parties, [appellee's] outstanding debt to her father for payment of her attorney[']s fees represents a significant burden to her. [Appellant's] actions have caused increased cost and delay in this matter, resulting in greater attorney['s] fees for [appellee]. The [c]ourt finds that [appellee] was substantially justified in her prosecution of this case.

Throughout these proceedings, [appellant] has frustrated the prosecution of this case. Without belaboring the issue, the [c]ourt believes that [appellant's] negligible participation in the discovery process and his evasive answers during depositions and trial have put [appellee] in a difficult position. [Appellant] has provided incomplete and inaccurate business records on behalf of [his business] and yet, during these proceedings, has stonewalled all attempts to untangle the situation to permit some reasonable resolution.

The court was thus offended because it believed that an injustice had been visited upon appellee as a result of what the court perceived to be a conspiratorial alliance between appellant and his attorneys to divest—or at least make unavailable to—appellee the contemplated source of funds to satisfy the monetary award granted to appellee. The course of conduct the court found objectionable included that, after the Judgment of Absolute Divorce was entered, appellant ignored court orders and failed to pay child support for his two children in the amount of $22,993.98,[11] as well as alimony, for which the

11. Because of a lien, appellee received $22,993.98 upon the sale of the marital home.

arrearage, at the time of trial, was $44,370.02. As of January 30, 2007, appellant had not paid appellee's attorney's fees, despite a court order to have paid the fees in monthly installments, with the last installment to have been paid on September 1, 2006. And of course, what the court believed to be most egregious was the transfer of the remainder of appellant's interest in the marital home to the Brodsky firm, just four days prior to settlement, to defeat appellee's ability to recover the monetary award from those funds.

Troubled by the Brodsky firm's action, the trial judge found that there is "a possible conflict of interest created by the Brodsky [f]irm's deeds of trust, which may run afoul of [Maryland Lawyers' Rules of Professional Conduct] 1.7 and 1.8." *See Broseus v. Broseus,* 82 Md.App. 183, 202, 570 A.2d 874 (1990) (explaining in *dicta* that, obtaining deeds of trust from a client in satisfaction of attorney's fees owed is the "type of transaction ... fraught with the potential of overreaching and conflict of interest").

Rule 1.8(a) [12] precludes a lawyer from entering into a business transaction with the client unless certain safeguards are satisfied. The trial court found that, under the circumstances, it was questionable whether the creation of the two liens was "fair and reasonable" to appellant. Comment three to Rule 1.8 provides that "[t]he risk to the client is greatest when ... the lawyer's financial interest ... poses a significant risk that the lawyer's representation of the client will be materially

---

12. Rule 1.8(a) provides:
> A lawyer shall not enter into a business transaction with a client unless:
> (1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing in a manner that can be reasonably understood by the client;
> (2) the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and
> (3) the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.

limited by the lawyer's financial interest in the transaction." *Id.* In that event, the lawyer must also comply with Rule 1.7, which requires the lawyer to disclose the risks associated with the lawyer's dual role as both legal advisor and participant in the transaction. In some cases, the lawyer's interest may be such that Rule 1.7 will preclude the lawyer from seeking the client's consent to the transaction. Rule 1.8 cmt. 3.

The trial judge concluded that, by entering into the transactions at issue and subsequently arguing to uphold them, the Brodsky firm exposed appellant to a number of detrimental scenarios, including contempt, an interest—bearing money judgment and attachment of his other assets.

The trial court never made a determination on the pivotal issue of whether placing a lien against appellant's interest in the marital home created a conflict of interest with the Brodsky's firm reasonable belief that it could provide competent and diligent representation for appellant. The trial court did, however, comment generally upon *Post v. Bregman,* 349 Md. 142, 707 A.2d 806 (1998), which stands for the proposition that Maryland courts have given effect to rules embodied in the Maryland Lawyers' Rules of Professional Responsibility outside the disciplinary arena, albeit with the caveat that the parties ought not to invoke the rules as procedural weapons. Because neither party raised the issue of the validity of the deeds of trust in relation to the rules of professional responsibility and the trial court never ruled upon the issue, the question is not properly before us on appeal.[13] Md. Rule 8–131(a).

---

**13.** The trial court appears to be calling upon us to address this issue or at the very least consider addressing the issue to resolve the instant appeal. Noting that the posture of the case *sub judice* differs from that of *Post,* the trial judge opined that it would not dispositively determine the validity of the deeds of trust in relation to the MLRPC and accordingly wrote:

None of which is to say that the facts of this case may not persuade a higher court to apply the ethical rules to remedy what this [c]ourt perceives as a manifest injustice to [appellee]. From all indications, [appellant] is willing to circumvent the obligations imposed on him

At oral argument before this court, counsel for the Brodsky firm stressed that appellant had "other funds," at his disposal, aside from the proceeds yielded from the sale of the marital home, to pay the monetary award. According to the Brodsky firm, the trial court found that appellant's business is valued at $264,955 and that he possesses separate assets valued at $296,380.

Irrespective of whether an injustice resulted from the imposition of liens against the proceeds of the marital home to satisfy appellant's legal fees or whether appellant retains other sources from which appellee may recover her monetary award, in the final analysis, because the trial court did not reduce the monetary award to a judgment, the Brodsky firm had priority to appellant's interest in the proceeds. Bluntly put, the trial court, understandably so, felt that it had been stung because it had been for appellant's benefit that, with clear purpose and intent, it had not entered a money judgment. Consequently, given that the genesis of the controversy at the core of this appeal is the particular action of the trial judge, we take no position in this opinion on whether ethical bounds were crossed. We leave the issue for another day and other fora. For the purposes of this appeal, it was error for the court to grant appellee's Emergency Motion and to enter a money judgment against the Brodsky firm.

**JUDGMENT OF THE CIRCUIT COURT FOR MONT-GOMERY COUNTY REVERSED.**

**COSTS TO BE PAID BY APPELLEE.**

---

through the Judgment of Absolute Divorce by disposing of his assets from the sale of the home to the benefit of his attorneys and in derogation of this [c]ourt's order.